## Edward J. Hamel v. The People, etc.

1. JURY TRIALS—*May be Waived in Prosecutions for Misdemeanors.*
—In prosecutions for misdemeanors the defendant may waive his right
to a trial by jury.

2. ATTORNEYS—*Failing to Pay Over Moneys Collected.*—The statute
providing that if an attorney fails or refuses to pay over any money col-
lected by him, less his proper charges, on demand by the person entitled
to receive the same, or his agent duly authorized, he shall be fined, etc.,
is highly penal, as on conviction it becomes the duty of the court to
forever prohibit such attorney from practicing his profession in the
State, and before a conviction can be justified, aside from other requisite
proof there must be no reasonable question under the evidence either that
the attorney's compensation had been agreed upon, or proof beyond a
reasonable doubt as to what his reasonable charges were.

Prosecution, for a failure to pay over money collected. Error to the
Criminal Court of Cook County; the Hon. THEODORE BRENTANO, Judge,
presiding. Heard in this court at the October term, 1900. Reversed
and remanded. Opinion filed October 24, 1901.

Statement by the Court.—Plaintiff in error, an attorney
of the Chicago bar, was indicted for failing and refusing to
pay over certain money collected by him as attorney at law
for one Kate McGinnis, less his proper charges, and on a
trial before the Criminal Court of Cook County, a jury
having been waived in writing by plaintiff in error, he was
found guilty, and the value of the property was fixed at
$26.90. After motions for new trial and in arrest of judg-
ment were respectively overruled, the court entered judg-
ment that the defendant be fined the sum of $53.80, that
execution issue therefor, and that defendant also be pro-
hibited from practicing his profession as attorney at law in
this State. To reverse this judgment the writ of error
herein is prosecuted.

OSSIAN CAMERON, attorney for plaintiff in error.

An attorney who retains in his hands money collected
for his client, which he claims is due him, not only for
services rendered in the collection, but on a balance for
services rendered in other proceedings, can not be convicted
of embezzlement. Van Etten v. State, 24 Neb. 734.

It is now well established that on an indictment for felony the accused can not confer jurisdiction upon the court, or dispense with a finding of the fact of guilt by a jury, except by plea of guilty. Harris v. People, 128 Ill. 585; Morgan v. People, 136 Ill. 162; Brewster v. People, 183 Ill. 144.

In case of misdemeanor the law is not so well settled and the practice in the different States is not uniform. To ascertain the true rule it will be necessary to examine the constitutional and statutory provisions relating to the subject as follows: .

" No person shall be deprived of life, liberty or property without due process of law." Sec. 2, Art 2, Const. Ill.

" The right of trial by jury, as heretofore enjoyed, shall remain inviolate." Sec. 5, Art. 2, Const. Ill.

" In all criminal prosecutions the accused shall have a right to a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." Sec. 9, Art. 2, Const. Ill.

The rule in all criminal cases is, that the proof must be sufficient to satisfy the reason and judgment beyond reasonable doubt, of the guilt of the accused. Anything short of this will not justify a conviction. Bergen v. People, 17 Ill. 428; Porter v. People, 158 Ill. 374.

C. S. DENEEN, State's Attorney, HARRY OLSON, Assistant State's Attorney, attorneys for defendant in error.

The constitution clearly draws the distinction between felonies and misdemeanors, as far as indictments by grand juries are concerned. Art. II, Sec. 8, Constitution; Brewster v. People, 183 Ill. 149.

Jury trials in criminal cases at common law followed upon indictment in a common law court. Brewster v. People, 183 Ill. 149; People v. Fisher, 20 Barb. 652; People ex rel. v. Justices, 74 N. Y. 406; State v. Conlin, 27 Vt. 319.

The right to trial by jury, as guaranteed by Art. II, Sec. 5, of the constitution, refers to the right under the common law and as it existed prior to 1870. Brewster v. People, 183 Ill. 149; In re Ferrier, 103 Ill. 367; George v. People, 167 Ill. 447.

At common law and by our constitution a jury is an indispensable part of the court for the trial of a felony or offense punishable in the penitentiary, and can not be waived. Harris v. People, 128 Ill. 590; Morgan v. People, 136 Ill. 161; Cooley's Const. Lim., p. 398.

Jury may be waived in misdemeanors. Brewster v. People, 183 Ill. 149.

Mr. Presiding Justice Windes delivered the opinion of the court.

First, it is claimed that without a jury the Criminal Court had no power or authority to render judgment; that the waiver of the jury by plaintiff in error gave the court no power to try the case without the intervention of a jury. Numerous cases are cited by counsel in other jurisdictions, in support of the contention, but we think the question is settled against plaintiff in error by the case of Brewster v. The People, 183 Ill. 143, in which the court, in speaking of the constitutional provision that no person shall be held to answer for a criminal offense unless on an indictment of a grand jury, except in cases when the punishment is by fine, or imprisonment otherwise than in the penitentiary, say: "As jury trials in criminal cases as known to the common law were such as followed upon indictment in a common law court, and as our constitution refers to the right of trial by jury as it was understood at the common law, this prohibition against the right to waive a trial by jury can not apply to misdemeanors, because the constitution expressly provides that, in cases of misdemeanor, a person can be held to answer without indictment," and held that in cases of misdemeanor the defendant could waive a jury, the statute in this State permitting such waiver.

The punishment provided by the statute under which the indictment was found, is a fine or imprisonment in the county jail, or both, and prohibition from practicing his profession of attorney at law in the State. This is clearly a misdemeanor as defined by the statute, paragraphs 277 and 278 of the Criminal Code, which say (Sec. 5): "A felony

is an offense punishable by death or by imprisonment in the penitentiary. (Sec. 6:) Every other offense is a misdemeanor."

See also People v. Murphy, 185 Ill. 623–7, the latest expression of the Supreme Court on this subject to which our attention has been directed. We think the crime with which plaintiff in error was charged being a misdemeanor, he had a right to waive a jury trial and the court had jurisdiction to try him and render judgment.

Next it is claimed that the judgment is contrary to the evidence. It needs no citation of authority to establish the proposition that in criminal cases the proof must be sufficient to establish the guilt of the defendant beyond all reasonable doubt before a judgment of conviction can be justified.

The statute under which the conviction in this case was had is as follows:

"If any attorney at law, justice of the peace, constable, clerk of a court, or other person authorized by law to collect money, shall fail or refuse to pay over any money collected by him, less his proper charges, on demand by the person entitled to receive the same, or his agent, duly authorized, he shall be fined," etc.

We are of opinion that the evidence in this case fails to establish the guilt of the defendant beyond all reasonable doubt. Before there could be a conviction, the other essentials to guilt being established, it must appear that the defendant failed or refused to pay over money collected by him, less his proper charges.

The evidence shows that Edward J. Hamel was employed by Mrs. Kate McGinnis through his wife, Emma L. Hamel, who had charge of his office in Chicago, to collect a claim of $36 from a Mrs. Duncan in Bloomington, Illinois. When the claim was left for collection the evidence shows that no definite contract was made as to what the charges would be. Mrs. Hamel testified that she told Mrs. McGinnis, when the latter asked with reference to the charge, it was "twenty-five per cent in the city, but I do not know how much it would be out of the city. * * * I told her we would take it at twenty-five per cent if we collected it. If

Hamel v. The People.

we have to sue it that is a different matter. I did not know what a suit would cost, and I meant she would have to see Mr. Hamel."

The defendant did not see Mrs. McGinnis when the claim was left, but says that the arrangement was made of twenty-five per cent simply for the collection of the claim; that the original contract was for dunning and collection only. The claim was sent by Hamel to E. E. Donnelly, an attorney at Bloomington, Illinois, about June 22, 1899, who testified that Mr. Hamel wrote him, stating that the commission would be twenty-five per cent, two-thirds to witness; also that he collected the claim after suit and judgment thereon, and sent the proceeds, $36, less his charges of $6.10, to Hamel on October 25, 1899. It appears that some time after the claim was sent to Donnelly, Mrs. McGinnis became dissatisfied with the progress made toward its collection, and requested Hamel to return her papers. Hamel wrote to Donnelly in order to get the papers returned, but the latter refused to return them unless he had a fee, or an opportunity to sue, whereupon Hamel communicated that fact to Mrs. McGinnis; but she declined to advance the costs, and was then told by Hamel that if the claim had to be sued, the original contract for twenty-five per cent would not hold, and when asked by him what she wished to do about it, he testifies that she said she would take $10 for the claim. Another witness, Hanley, and also Mrs. Hamel, testified that Mrs. McGinnis said that she was satisfied to take $10 for the claim. Mrs. McGinnis does not deny that she so stated.

The net proceeds of the collection were sent by Donnelly on October 25, 1899, to Hamel, and the next day after their receipt he sent Mrs. Hamel to Mrs. McGinnis with $20, retaining $9.90 for his charges. Mrs. Hamel offered the money to Mrs. McGinnis, who said, "I would be perfectly satisfied, that is more than I expected, but Mr. McGinnis told me not to make any settlement without seeing him. I will send him to your office;" and declined to take the $20. Mr. McGinnis subsequently, upon an order from Mrs.

McGinnis, demanded $27 from Hamel, which the latter declined to pay, though he offered to pay the $20.    Later, when Mr. McGinnis came to Hamel's office and demanded the $27, the latter offered to go to the office of an attorney, Mr. Barrett, and submit the matter to him, and that if Mr. Barrett should say that he, Hamel, owed the $27, he would pay it.    They went to Mr. Barrett's office and talked over the case, and when Mr. Barrett, in effect, told Mr. McGinnis that $20 was right, the latter refused to take that amount. Later, when Hamel received a communication from the state's attorney regarding the matter, he sent a communication in which he expressed himself to the state's attorney as being entirely willing to leave the matter to arbitration and to pay any amount he, the state's attorney, might consider due to Mrs. McGinnis.

Donnelly, who had fifteen years experience in collections, admits that claims are as a rule sent on a contingent compensation, and that there was a demand made upon him for the return of Mrs. McGinnis' papers, which he refused. Mrs. McGinnis admits also that when she was asked on October 28th to take $20 by Mrs. Hamel, that she said she would think it over.

In view of this evidence, it is by no means clear that Hamel agreed to charge Mrs. McGinnis only twenty-five per cent of the amount of the claim in case it was necessary to bring suit in order to collect it.    There is no evidence whatever as to what was a proper charge, under the circumstances, for Hamel's services.

There is no doubt, all the evidence considered, that there was a *bona fide* claim on the part of Hamel that he was entitled to $9.90 for his services in the collection made. This is not without basis, too, when it is considered that Mrs. McGinnis refused to pay any costs for the commencement of a suit, and that Hamel made himself responsible for the costs when suit was commenced.    Also, his good faith is shown by the fact, which is clearly established, that within a day or two after he received the money from Donnelly he offered to pay $20, and at least on two occasions

thereafter, to Mr. McGinnis and the state's attorney, offered to pay whatever was reasonable, in the one case leaving it to Mr. Barrett, the attorney, and in the other, to the state's attorney.

If, under such evidence as is contained in this record, an attorney at law can be found guilty under this statute, then there would be little safety for the attorney who did not allow his client to determine what should be a proper charge for his services. The statute is highly penal, in that it becomes the duty of the court, on a conviction under it of an attorney at law, to forever prohibit him from practicing his profession in the State, and should therefore be strictly construed. Before a conviction would be justified, aside from the other requisite proof, there should be no reasonable question under the evidence either that the attorney's compensation had been agreed upon, or there should be proof, beyond a reasonable doubt, as to what were his proper charges.

The judgment is reversed and the cause remanded.