THE PEOPLE ex rel. W. H. STEAD, Attorney General,

v.

THE CHICAGO, INDIANAPOLIS AND LOUISVILLE RY. CO. et al.

*Opinion filed October 23, 1906—Rehearing denied Dec. 5, 1906.*

1. RAILROADS—*the expression "doing business in this State" construed.* The words "doing business in this State," used in section 6 of the act relating to the railroad and warehouse commission, requiring every railroad incorporated or doing business in this State to report annually to the railroad and warehouse commission, mean doing the business or character of business for which the railroad corporation was organized.

2. SAME—*section 6 of Railroad and Warehouse Commission act applies to all railroads doing business in Illinois.* Section 6 of the Railroad and Warehouse Commission act, (Rev. Stat. 1874, p. 829,) requiring railroad companies to make an annual report of their affairs to the commissioners, applies to all railroad companies doing business in Illinois, including foreign railroad corporations engaged in inter-State commerce.

3. CONSTITUTIONAL LAW—*when law does not violate commerce provision of Federal constitution.* The provision of the Federal constitution giving Congress the power to regulate commerce between States is not violated by a State law passed under its police power and operating upon the subjects and means of inter-State commerce and persons engaged therein, unless, in its effect, it lays some burdens or restrictions upon such commerce which would not otherwise exist.

4. SAME—*State may create a board to regulate railroads.* A State has power to create an administrative board and invest it with power to make rules and regulations applicable to all railroad corporations doing business in the State, provided such rules do not obstruct or hinder inter-State commerce nor conflict with the Federal laws upon that subject.

5. SAME—*section 6 of Railroad and Warehouse Commission act is not unconstitutional.* Section 6 of the act relating to the railroad and warehouse commission, (Rev. Stat. 1874, p. 829,) which requires all railroads doing business in Illinois to make an annual report to the railroad and warehouse commission, is not in conflict with the provision of the Federal constitution relating to inter-State commerce nor with the Federal laws governing that subject.

6. MANDAMUS—*mandamus will lie to compel railroad company to make the report required by law.* A writ of *mandamus* will be

awarded, at the suit of the Attorney General, to compel a railroad corporation doing business in this State to make the report to the railroad and warehouse commissioners required by section 6 of the Railroad and Warehouse Commission act.

ORIGINAL petition for *mandamus.*

W. H. STEAD, Attorney General, and GEORGE B. GIL-LESPIE, for petitioner:

Under the statute *mandamus* will lie in all cases when it affords a proper and sufficient remedy for the enforcement of a legal right or of an obvious duty, the performance of which involves no discretion, without regard to whether there may be some other adequate remedy or not. *Crown Coal Co.* v. *Thomas,* 60 Ill. App. 239; *Railway Co.* v. *People,* 121 id. 483.

In cases where the duty sought to be enforced by *mandamus* is of a public nature and there is no one empowered to demand its performance the law imposing the duty stands as a continual demand, and there is no necessity of a specific demand and refusal. Previous demand is not necessary to authorize *mandamus* proceedings where a positive public duty is enjoined, but the law stands as a continuing demand upon the party enjoined to perform the duty from day to day. *State Board* v. *People,* 191 Ill. 528; *Loewenthal* v. *People,* 192 id. 222; *People* v. *Crabb,* 156 id. 155.

Demand and refusal to perform a public duty need not be shown. *People* v. *Kipley,* 171 Ill. 144; *People* v. *Board of Education,* 127 id. 613.

*Mandamus* will lie against a *quasi* public corporation to compel the performance of any specific duty to the public enjoined by a positive law. *Railway Co.* v. *People,* 56 Ill. 365; *People* v. *Railroad Co.* 176 id. 512; *People* v. *Railroad Co.* 178 id. 594.

The statute provides that every railroad company incorporated or doing business in this State, or which shall hereafter become incorporated or do business in this State, shall,

on or before the first day of September of each year, make
and transmit to the railroad and warehouse commissioners a
full and true statement of the affairs and business of such
corporation as the same existed on the first day of the pre-
ceding July, specifying a number of items the report or
statement shall show.  Hurd's Stat. 1901, chap. 114. sec. 6.

A State may legislate with reference to local needs, al-
though inter-State commerce is affected, where the matter
regulated is not of a national character and does not admit
of nor require a uniform system of regulation; provided,
however, that there has been no congressional legislation in
respect thereto.  17 Am. & Eng. Ency. of Law, (2d ed.) 55.

Legislation which is a mere aid to commerce may be
enacted by a State although at the same time it may inci-
dentally affect commerce itself.  17 Am. & Eng. Ency. of
Law, (2d ed.) 55.

Local laws regulating, incidentally, inter-State commerce
have their source in the powers of the State reserved and
never surrendered to Congress, or providing for the public
health, the public morals and public safety.  All State legis-
lation regulating or affecting inter-State commerce must, in
order to be valid, be enacted in pursuance of the police pow-
ers of the State.  17 Am. & Eng. Ency. of Law, (2d ed.) 56.

A State may make reasonable regulations to secure the
safety of passengers, even on an inter-State train while
within its borders, but the State can do nothing which will
directly burden inter-State commerce.  17 Am. & Eng. Ency.
of Law, (2d ed.) 95.

It lies within the police power of a State to regulate the
instrumentalities of inter-State commerce.  Russell on Police
Powers, 153.

A dam may be built which is a necessary health regula-
tion, though it in some measure results in interfering with
inter-State commerce.  *Wilson* v *Blackbird,* 2 Pet. 245.

A State law requiring locomotive engineers to be li-
censed, though affecting inter-State commerce, is a proper

exercise of the police power of the State. *Railroad Co.* v. *Alabama,* 128 U. S. 96; *Smith* v. *Alabama,* 124 id. 75.

A statute requiring an inter-State train to stop at a station on its line to receive and discharge passengers, in the absence of Federal legislation on the subject, is not an infringement upon Federal authority. *Railroad Co.* v. *Ohio,* 173 U. S. 285.

A law separating colored and white passengers on an inter-State train is held to be a valid regulation of inter-State commerce. *Plessy* v. *Ferguson,* 163 U. S. 537.

A steamboat engaged in inter-State commerce may be required by a State law to be provided with suitable screens to prevent the emission of sparks. *Burroughs* v. *Delta Co.* 106 Mich. 582.

It lies within the power of a State to control and regulate inter-State railways through State commissions, to the fullest extent the State may desire to do so, under its police powers; provided, only, that no law may be passed to impose a burden upon or discriminate against them as agencies of inter-State commerce. *Railroad Commission Cases,* 116 U. S. 307; *Railroad Co.* v. *Bristol,* 151 id. 556; *Railway Co.* v. *Railroad Comrs.* 19 Fed. Rep. 679.

G. W. KRETZINGER, and L. L. SMITH, for respondents:

The remedy by *mandamus* contemplates the necessity of indicating the precise thing to be done. It is not adapted to cases calling for continuous action, or action not precisely and definitely indicated and described. *People* v. *Dunne,* 219 Ill. 346; *King* v. *Krueger,* 51 Mich. 245.

The extraordinary remedy by *mandamus* is never granted in a doubtful case nor unless the party has a clear right thereto. *Yates* v. *People,* 207 Ill. 327.

A petition for *mandamus* must not only contain such affirmative allegations as are necessary to entitle the party to relief, but it must also be averred that other facts which would justify the omission complained of do not exist. *Goss*

v. *Mermontville*, 44 Mich. 319; *Horie* v. *Sommerset*, 25 Me. 334.

A petition for *mandamus* will be construed most strongly against the petitioner. *Bromwell* v. *Flower*, 217 Ill. 174; *People* v. *Mt. Morris*, 145 id. 432.

When the right to the remedy by *mandamus* is doubtful, the claimant must resort to some other appropriate remedy. *People* v. *Johnson*, 100 Ill. 543; *People* v. *Dulaney*, 96 id. 503; *People* v. *Klokke*, 92 id. 134.

The granting of the writ is not imperative, but discretionary with the court. *People* v. *Supervisors*, 185 Ill. 288.

The proper province of a writ of *mandamus* is to enjoin the doing of particular specified acts, and not to constrain a person to regulate his whole course of conduct according to some general principle. When the prayer is broad and general the writ will be denied. *People* v. *Dunne*, 219 Ill. 346; *Rosenfeld* v. *Einstein*, 46 N. J. L. 480; *Diamond Match Co.* v. *Powers*, 51 Mich. 147.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is an original petition for *mandamus* in this court in the name of the People of the State of Illinois, on the relation of W. H. Stead, as Attorney General, against the Chicago, Indianapolis and Louisville Railway Company, (hereinafter called the company,) a non-resident railway corporation, and W. H. McDoel, president and general manager of said company, praying for a peremptory *mandamus* commanding respondents to report to the railroad and warehouse commission, as required by section 6 of an act to establish a board of railroad and warehouse commissioners and prescribe their duties, approved April 13, 1875. The petition avers that the said company has been and is possessed of, owning and operating, by lease or otherwise, a certain line of railway from a point on the State line dividing the State of Illinois from the State of Indiana, to a point

in the city of Chicago, about nineteen miles in length and located in the county of Cook and the State of Illinois; that Chicago is the terminal point of said company, where it maintains depots, freight, storage and warehouses for the handling of freight and passenger traffic and yards, side and terminal tracks for the handling of cars and the transaction of its business as a common carrier; that the said company is operating, by lease or otherwise, a large system of railway within the States of Indiana, Illinois and Ohio, and terminating in the city of Louisville, in the State of Kentucky; that the company receives a large amount of business, both passenger and freight, as a common carrier in the city of Chicago and transports the same to the other States; that said company is possessed of a large amount of railroad property in the city of Chicago and along its line in the State of Illinois which is subject to taxation under the laws of this State; that said company and its president have wholly neglected and refused to make or cause to be made a report in accordance with the law as above set forth; that suit has been commenced by the petitioner against respondents to recover the penalties prescribed by said act for a failure to make said report as required by said section 6, in the circuit court of Cook county, where said cause is now pending, but that said case will not be reached for trial, in the regular course of the call of the Cook county docket, earlier than from three to five years. The petition prays for a writ of *mandamus* commanding respondents to make the report required by said section 6, which petitioner avers, on information and belief, will not be made until compelled by the order of some court of competent jurisdiction. Respondents have filed demurrers, both general and special, to the petition, and the questions here involved relate to the sufficiency of the petition when challenged by demurrer.

*First*—Respondents contend that section 6 of the Railroad and Warehouse Commission act has no application to this company, as the petition shows on its face that the com-

pany is a foreign corporation engaged in inter-State commerce, and that said section should be so construed as to exclude this company, thereby obviating a construction that would render the section void, as being an attempt by the State to interfere with the exclusive jurisdiction of Congress over the subject of inter-State commerce.

Section 6 of said act is as follows: "Every railroad company incorporated or doing business in this State, or which shall hereafter become incorporated, or do business under any general or special law of this State, shall, on or before the first day of September, in the year of our Lord 1871, and on or before the same day in each year thereafter, make and transmit to the commissioners appointed by virtue of this act, at their office in Springfield, a full and true statement, under oath of the proper officers of said corporation, of the affairs of their said corporation, as the same existed on the first day of the preceding July." Then follow forty-one clauses designating, in detail, the subjects upon which the report shall furnish information.

Section 7 of this act authorizes the commissioners to propound any additional interrogatories to such railroad companies, which shall be answered in the same manner as those specified. Section 8 makes sections 6 and 7 applicable to the president, directors and officers of every railroad company now existing or which shall hereafter be incorporated or organized in this State, and to every lessee, manager and operator of any railroad in this State. Section 10 of said act makes it the duty of the railroad and warehouse commission to report at least once a year all its doings to the Governor, giving such facts, statements and explanations as will disclose the actual workings of the railroad systems of the State in their bearing and relation to the business and prosperity of the people of the State. Section 11 requires the commissioners to examine into the management and all other matters concerning the business of railroads, as far as the same pertain to the relation of such roads to the public

and to the security and accommodation of persons doing business therewith, and to ascertain whether such railroad companies, their officers, managers, lessees and agents, comply with the law of the State concerning them. These provisions are all referred to for the reason that all of them seem to have some bearing upon the proper construction of section 6.

The language of section 6 is so broad and comprehensive that it is difficult to see how it can be interpreted so as to exclude any railroad company doing business in this State. "Every railroad company incorporated or doing business in this State," clearly includes companies incorporated under the laws of Illinois and companies incorporated under the laws of other States and which are engaged in the usual business of a railroad corporation within this State. The expression "doing business in this State," occurs in section 26 of chapter 32, and is used with respect to foreign corporations. This language has been defined to mean, doing the business or character of business for which the corporation was organized. (*Bradbury* v. *Waukegan and Washington Mining Co.* 113 Ill. App. 600; *Mandel* v. *Swan Land and Cattle Co.* 154 Ill. 177; *Harding* v. *American Glucose Co.* 182 id. 551.) In addition to the general averment in the petition that the company was doing business in this State, facts are set out from which it is manifest that this company was extensively engaged in the operation of a railroad line in this State and carried on generally the business of a common carrier of both freight and passengers.

We come more readily to the view that all railroads doing business in this State are included within the purview of section 6 of this act when we consider the object of this legislation as gathered from the general scope of the act and the impossibility of attaining its purposes if it is to be limited to those roads that are exclusively engaged in intra-State commerce. Among the objects to be attained by the creation of the railroad and warehouse commission and in

giving to it a supervisory and administrative power over the maintenance, management and operation of railroads, is to protect the lives and health of the traveling public, to guard against discrimination and oppression, and generally to promote the efficiency of railroad companies in the discharge of their duties to the State and the people. If railroads engaged in inter-State commerce are for that reason exempt from the duty imposed by section 6, then they must be excluded from all other provisions of the act for the same reason.

In the application of this law we see no reason for a distinction based on the legal residence of the corporation. If a railroad company chartered in Illinois is engaged in inter-State commerce, the prohibition of the commerce clause of the Federal constitution applies to the State of Illinois with respect to such company equally with every other State prohibiting one as well as another from imposing any restrictions or burdens on commerce between the States.

Since, in our opinion, section 6 must be held *ex vi termini* applicable to all railroads which are doing business in this State, without reference to the State from which they derive their charters and wholly regardless of whether they are engaged in inter-State or intra-State commerce, we come next to the question whether this section is void under the commerce clause of the constitution of the United States. This clause provides that Congress shall have power to "regulate commerce with foreign nations and among the several States and with the Indian tribes." (U. S. Const. art. 1, sec. 8, par. 3.) No well defined classification has been made of the laws which a State may properly pass under its taxing or police power and those which it may not pass because of the exclusive power of Congress over inter-State commerce. Indeed, the difficulties inherent in the subject are such that, so far, courts have dealt with each case by its points of agreement or disagreement with previous cases and deduced therefrom a decision of the case in hand. The cases

in the United States Supreme Court on this subject may be clasified under one or the other of the following heads: (1) Cases where the power of the State is exclusive; (2) cases in which the State may act in the absence of conflicting legislation by Congress; (3) cases where the power of Congress is exclusive and the State cannot act at all. (*Bridge Co. v. Kentucky,* 154 U. S. 204.) This classification is not very helpful in the decision of any given case, since the case must be decided before it can be classified. "Commerce" means the exchange of property, and includes the usual agencies of communication and transportation to effect the exchange. It extends to the means employed to move the property involved and the persons making the contract. Inter-State commerce is the exchange of property in one State for property in another, and its essential characteristic is that it involves the moving of property from one State to another. (*People* v. *Reardon,* 77 N. E. Rep. 970, N. Y. Ct. of App. 1906.) A State, under its inherent and reserved police power, may enact any law promotive of the peace and good order of society; for the preservation of life and health or conducive to the comfort, convenience and welfare of the people. It is no valid objection that such law operates on the subjects and means of inter-State commerce and persons engaged therein, unless, in its effect, it lays some burdens or restrictions thereon which otherwise would not exist. Thus, States may exclude animals having contagious diseases. (*Ried* v. *Colorado,* 187 U. S. 137.) They may prohibit the consolidation of competing or parallel lines of railroad. (*Louisville and Nashville Railroad Co.* v. *Kentucky,* 161 U. S. 677.) They may compel the erection and maintenance of fences and cattle-guards. (*Minneapolis and St. Louis Railroad Co.* v. *Emmons,* 149 U. S. 364.) They may compel engineers operating freight and passenger engines to have their eyes examined. (*Smith* v. *Alabama,* 124 U. S. 465.) They may provide for the separation of white and colored races on trains, (*Louisville, New Orleans and Texas*

*Railway Co.* v. *Mississippi,* 133 U. S. 587,) and prohibit
the running of freight trains on Sunday. (*Hennington* v.
*Georgia,* 163 U. S. 299.) In all these cases, and many
others of like character, the State laws in question oper-
ated either on subjects or means of or the persons engaged
in inter-State commerce, and they were sustained on the
ground that they were properly within the reserved powers
of the States, and did not, in their effect and intention, op-
erate, except incidentally, as a restriction or burden on com-
merce between the States. These cases, and others in line
with them, recognize the right of the State to adopt such
laws as, in the wisdom of the legislature, will subserve the
best interests of the people and enforce them against all per-
sons and corporations that come within the territorial ju-
risdiction, subject to the limitation that no restrictions or
burdens shall be laid on inter-State commerce. Any business
corporation organized under the laws of a foreign State or
country which comes into this State for the purpose of do-
ing business becomes subject to all the laws applicable to
domestic corporations engaged in the same line of business.
This is illustrated by foreign insurance companies doing
business in this State. They must comply with the laws of
the State within which they propose to do business, in the
same manner and to the same extent as domestic insurance
companies. (*Doyle* v. *Continental Ins. Co.* 94 U. S. 535.)
But for the clause of the Federal constitution now under con-
sideration corporations doing an inter-State commerce busi-
ness would stand upon the same footing and be subject to the
same regulations as other corporations, either domestic or
foreign.

It follows that all the powers which inhere in the people
of a State, and which have not been expressly granted to the
United States and not prohibited to the States, still reside
with the people with respect to common carriers of inter-
State commerce as well as to persons and companies engaged
in other lines of business. The power of a State to create

an administrative board and invest it with power to make reasonable rules and regulations applicable to all railroads , doing business in the State has been upheld. (*Railroad Commission cases,* 116 U. S. 307; *New York and Northeastern Railroad Co.* v. *Town of Bristol,* 151 id. 556; *American Steel and Wire Co.* v. *Speed,* 192 id. 500; *Houston and Texas Central Railway Co.* v. *Mayes,* 201 id. 321; *McNeill* v. *Southern Railway Co.* 202 id. 543.) In the *Mayes case,* above cited, Mr. Justice Brown, on page 328 of the opinion, uses this language: "That notwithstanding the exclusive nature of this power, (to regulate commerce,) the States may, in the exercise of their police power, make reasonable rules with regard to the methods of carrying on inter-State business, the precautions that shall be used to avoid danger, the facilities for the comfort of passengers and the safety of freight carried, and, to a certain extent, the stations at which stoppages shall be made, is settled by repeated decisions of this court. Of course, such rules are inoperative if conflicting with regulations on the same subject enacted by Congress, and can be supported only when consistent with the general requirement that inter-State commerce shall be free and unobstructed and not amounting to a regulation of such commerce. As the power to build and operate railways and to acquire land by condemnation usually rests upon State authority, the legislatures may annex such conditions as they please with regard to intra-State transportation, and such other rules regarding inter-State commerce as are not inconsistent with the general right of such commerce to be free and unobstructed."

In the light of these authorities, what should be the rule in the case at bar? Here the State has created an administrative agency, called railroad and warehouse commission. It has enjoined upon this commission certain duties, among others, to examine into the condition and management and all other matters pertaining to railroads, so far as the same concern the relation of such roads to the public and the ac-

commodation and security of persons doing business therewith. They are required to report such facts, statements and explanations to the Governor once each year as will disclose the actual working of the railroad system of transportation, in their bearings upon the business and prosperity of the people. All this is, manifestly, for the purpose, in part, at least, of uncovering the necessity for such corrective legislation as the State may properly enact. How is the commission to perform these duties unless it has some means of obtaining the necessary data upon which it can act, and such as the executive and legislative branches of the government will require as a guide in the application of appropriate remedies? Section 6 meets this requirement and is the superstructure of the whole act. This law does not impose any tax or license on the business or the property of the company. It does not direct when or how its trains shall be run, or seek to direct, manage or control its internal affairs. So far as this particular section is concerned, it, in effect, says: "Do your business in your own way, but report to the people of the State once a year what you have, what you are doing and how you are doing it." This, in our opinion, is not a restriction or a burden on inter-State commerce, within any rule laid down in any of the adjudged cases. If it be said that the information called for may be used as the basis of some future unconstitutional legislation, we reply that it will be time enough to meet that emergency when it arises, if it ever does.

It is said in argument that Congress having acted on this subject in the passage of the Inter-State Commerce law of 1887 and the several amendments thereto, the right of the State to legislate on that subject is gone and the power of Congress is exclusive. This would be sound if there was a collision between the State and Federal statutes. In such case the Federal statute would prevail over the State law; and if the State law was a regulation of inter-State commerce it would give way under the constitution, whether

Congress had acted or not. But in a case where the State law is not repugnant to the constitution and is not in conflict with existing Federal legislation on the subject, we do not understand that the bare fact that Congress has assumed to act makes the powers granted to the Federal government greater or those reserved to the State less than they would be without such action. In respect to subjects over which the power of Congress is exclusive, a failure to act means that the subject is to be left free; (*Robbins* v. *Shelby County Taxing District*, 120 U. S. 489; *Leisy* v. *Harding*, 135 id. 100;) and in regard to subjects exclusively under the control of Congress, such as the regulation of inter-State commerce, but which are at the same time and within certain limitations subject to the police regulations of the State, then the State regulation is only void in the paticulars wherein it conflicts with the Federal law on the subject. There is no conflict between section 6 and the Federal law on the same subject. Section 20 of the Inter-State Commerce law requires a report to the inter-State commerce commission, substantially the same as required by our statute. The similarity is, indeed, so striking as to suggest that the one might have been modeled after the other. The section of the statute is free from the objection that it is void under the provisions of the constitution relating to commerce or as being in conflict with the Federal law.

Respondents have argued some other matters of minor importance, but none of them, in our view, afford any reason for sustaining the demurrer.

The facts alleged in the petition show a clear right to the writ. The demurrer will therefore be overruled and a peremptory writ of *mandamus* awarded.    *Writ awarded.*