D. E. LaBELLE v. HENNEPIN COUNTY BAR ASSOCIATION AND OTHERS.[1]

November 24, 1939.

No. 32,069.

[1]Reported in 288 N. W. 788.

*D. E. LaBelle, pro se.*

*Paul J. Thompson, Chester L. Nichols, Andrew N. Johnson, John A. Goldie, Martin J. Ward, Carl F. Granrud,* and *Pliny L. Solether,* for respondents.

*Josiah E. Brill, amicus curiae,* filed a brief in support of the contention of respondents.

PETERSON, JUSTICE.

Plaintiff, a member of the Hennepin County Bar Association, brings this friendly action under the declaratory judgments law to obtain a declaration of its powers to conduct so-called bar plebescites for the purpose of ascertaining the preference of all lawyers practicing in Hennepin county for candidates for election or appointment as judges of the district and probate courts of the county and the municipal court of the city of Minneapolis. The individual defendants are officers of the association. Decision as to the association being decisive as to all parties, we shall refer to it as the defendant.

Defendant is a social and charitable corporation organized under 2 Mason Minn. St. 1927, §§ 7892-7900. Its articles of incorporation provide:

"The general purpose of this corporation shall be to maintain the honor and dignity of the profession of the law, to cultivate social intercourse among its members, and to increase the usefulness of the profession in promoting the due administration of justice. The plan of operation shall be to hold frequent meetings of its members and to conduct such other activities as may be provided for in the By-Laws."

Before each primary election a "primary ballot" is taken to ascertain the preference for candidates to be voted on in the election. When a vacancy in judicial office occurs an "advisory ballot" is taken for the purpose of advising the governor of the preference for appointment. The plebescite is conducted by mailing to each member of the bar a ballot containing the names of all the candidates for the judicial office involved with envelopes for enclosing marked ballots and mailing the envelopes with enclosed ballots to the committee for tabulation of the votes cast. The entire expense of preparing, printing, and mailing the ballots and envelopes to the bar is paid out of defendant's funds, and

the work incident to the plebescite is done by its officers and committees.

Defendant's by-laws declare that the plebescite is for the purpose of determining for the bar and the general public the opinion of the bar of Hennepin county as to the relative merits of candidates for judicial office. The by-laws, a copy of which is furnished to every participant in the plebescite, provide that in voting only fitness of the candidates for the judicial office is to be considered and that the party affiliation of any candidate or supposed preference of the governor for any particular person, party, or class shall be disregarded.

After the result of the plebescite has been ascertained it is announced to the public. The daily and some other newspapers in Hennepin county contain articles giving publicity to such fact. Where appointment is to be made, the result is communicated to the governor with a request that he appoint one of the five candidates who received the highest vote in the plebescite. No expense is involved in giving such publicity or communication with the governor.

Plaintiff contends that the holding of a plebescite is *ultra vires* the corporation in the sense of not being comprehended in and as being in excess of its corporate powers and unlawful as being a payment and contribution for political purposes in violation of the corrupt practices act, 1 Mason Minn. St. 1927, § 563.[2] The

---

[2]Section 563—No corporation doing business in this state shall pay or contribute, or offer, consent, or agree to pay or contribute, directly or indirectly, any money, property, free service of its officers or employes or thing of value to any political party, organization, committee or individual for any political purpose whatsoever, or to promote or defeat the candidacy of any person for nomination, election or appointment to any political office. If any corporation shall be convicted of violating any of the provisions of this act, it shall be subject to a penalty in the amount of not exceeding ten thousand (10,000) dollars to be collected as other claims or demands for money are collected; and if a domestic corporation, in addition to said penalty, it may be dissolved; and if a foreign or nonresident corporation, in addition to said penalty, its right to do business in this state may be declared forfeited.

claim of *ultra vires* has been abandoned. Defendant maintains that the corrupt practices act applies only to corporations organized for pecuniary profit and hence has no application to it, since it is not organized for such purposes; and that, assuming application of the act, the conduct of the plebescites in the manner alleged does not constitute either a payment or contribution within the meaning of the statute. The *amicus curiae* urges in support of the proposition that the corrupt practices act does not apply to defendant that the judicial department of the government is independent of and exempt from legislative control and hence defendant is exempt from the act as a part of that department.

The court below sustained all the contentions of defendant and the *amicus curiae* and construed defendant's powers in accordance with those views.

■ The contention that the corrupt practices act does not apply to defendant rests upon the proposition that the statute applies only to a corporation organized for pecuniary profit doing business in the state, and that defendant is not doing business at all, much less that it so organized. The statute does not define the term "doing business." Hence the meaning of the term is to be taken as generally understood in the light of other legislation and the purpose of the statute.

Ordinarily, doing business means the exercise of the functions for which a corporation was created, whether such function be for profit or not. State ex rel. Griffith v. Knights of Ku Klux Klan, 117 Kan. 564, 232 P. 254, 37 A. L. R. 1267; Knights of Ku Klux Klan v. Commonwealth, 138 Va. 500, 122 S. E. 122; 17 Fletcher, Cyc. Corp. (Perm. ed.) § 8467.

Defendant's activities are to be considered as doing business under the statute under which it was incorporated. Subsection 4 of § 7893 requires the election of officers "to conduct the transactions of the society" and an annual meeting for such election "and the transaction of other business." Transacting business is the same as doing business.

Other statutes *in pari materia* seem to indicate quite persuasively that the language was used in the sense indicated. 1 Mason Minn. St. 1927, § 601 (originally L. 1905, c. 291, § 1) prohibits corporations organized for pecuniary profit from contributing for political purposes. Section 563 (originally Ex. Sess. L. 1912, c. 3, § 26) prohibits all corporations from so contributing. The enlargement of the language indicates an intention to enlarge the scope of the statutory prohibition so as to make it unlawful for all corporations to make campaign contributions, whether organized for pecuniary profit or not, and not to limit the prohibition only to those organizations for pecuniary profit. That corporations not organized for profit are to be deemed to be doing business is apparent from statutory provisions requiring them to state their place of business in their articles of incorporation, as for example those organized for charity, § 7901; the Y. M. C. A., § 8003; Chamber of Commerce, § 7906; and home for the aged, §§ 7923, 7924. The statute under which defendant is organized contains no such requirement, but provides that it shall state its plan of operation and location. The difference is not material, since the act itself speaks of defendant's activities as transacting business, which is the equivalent of doing business.

Where the intention has been to limit an act to corporations organized for profit, it has been so provided in express terms, as in the original law prohibiting campaign contributions by such corporations (§ 601, *supra*) and the statutes regulating the admission of foreign corporations to do business in the state which apply only to those organized for profit. 2 Mason Minn. St. 1927, §§ 7493 to 7495, now superseded by 3 Mason Minn. St. 1938 Supp. §§ 7495-1 to 7495-30.

The need for regulating campaign expenditures by corporations not organized for pecuniary profit is as great as that of other corporations. The purpose of the corrupt practices law is to prevent fraud and to insure the purity of elections by limiting the amounts of campaign expenses, prohibiting corporate campaign contributions, requiring publicity of all campaign contributions, and reg-

ulating practices incident to political campaigns. That nonprofit corporations and associations may raise funds for expenditure on behalf of candidates and measures to be voted on at an election as effectively as those organized for pecuniary profit is apparent from the decisions. In re Vannier v. Anti-Saloon League, 238 N. Y. 457, 144 N. E. 679 (an anti-saloon league organized as a corporation) ; In re Woodbury, 174 App. Div. 569, 160 N. Y. S. 902 (association formed to defeat a constitutional amendment) ; People v. Gansley, 191 Mich. 357, 158 N. W. 195, Ann. Cas. 1918E, 165 (contributions by a brewing company to an unincorporated committee called the Personal Liberty League, organized to oppose the adoption of a proposition to prohibit the sale of intoxicating liquor in a local option election) ; note, Ann. Cas. 1918E, 173.

■ Defendant is not a part of the judicial department of the government and is not exempt from legislative action. The argument in support of the affirmative is that defendant's membership is composed of attorneys, who are officers of the court, and that attorneys are not subject to legislative control in respect to activity in behalf of or against candidates for judicial office.

The defendant's corporate existence is entirely distinct from its membership. In re Vannier v. Anti-Saloon League, 238 N. Y. 457, 144 N. E. 679. The statute does not provide for defendant's incorporation as part of the judicial department. Defendant was organized by attorneys the same as they might incorporate any other social and charitable corporation. Since a corporation's attributes are derived from the law under which it was incorporated and not from its members, defendant did not acquire from the attorneys composing its membership any of their official status. There being neither a way, nor an attempt even, to confer the status of its individual members on defendant corporation, it never acquired and does not possess official status. Quite apart from the distinction just made, an attorney is not deemed an officer in a constitutional or statutory sense. Neither an attorney nor an incorporated bar association is part of the judicial branch of the government. They do not exercise the judicial function of

government. Dreidel v. City of Louisville, 268 Ky. 659, 105 S. W. (2d) 807; Lougee v. New Mexico Bureau of Revenue Commr. 42 N. M. 115, 76 P. (2d) 6. See the opinion on reargument in In re Cate (Cal. App.) 270 P. 968, reargument 273 P. 617. These cases but apply the rule we followed in In re Disbarment of Greathouse, 189 Minn. 51, 248 N. W. 735, that the office of attorney is not an office in the constitutional or statutory meaning, but is in the nature of a franchise or privilege. While the bar is an indispensable adjunct of the court for the administration of justice, its members are officers of and subject to the control of the court to that extent only. It has never been thought that the court's control extended to the attorney's conduct outside his professional capacity, including political activity in supporting or opposing candidates for judicial office. Such control is considered a denial to the attorney of his liberty as a citizen. State Board of Law Examiners v. Hart, 104 Minn. 88, 116 N. W. 212, 17 L.R.A.(N.S.) 585, 15 Ann. Cas. 197; State ex rel. Attorney General v. Circuit Court, 97 Wis. 1, 72 N. W. 193, 38 L. R. A. 554, 65 A. S. R. 90. The leading case is perhaps Ex parte Steinman and Hensel, 95 Pa. 220, 40 Am. R. 637, cited by us in the Hart case, in which Mr. Chief Justice Sharswood in upholding the right of the bar to act independently of the courts in criticizing judges, said that no class of the community should be freer to express and publish their opinions as to the capacity, impartiality, and integrity of judges and that [95 Pa. 239] "to say that an attorney can only act or speak on this subject under liability to be called to account and to be deprived of his profession and livelihood by the very judge or judges whom he may consider it his duty to attack and expose, is a position too monstrous to be entertained for a moment under our present system." Such conduct can be considered by the court only insofar as it reflects the attorney's character or lack of fitness to be a member of the bar apart from his disposition to criticize courts. In re Cannon, 206 Wis. 374, 240 N. W. 441; see: In re Disbarment of Cary, 146 Minn. 80, 177 N. W. 801, 9 A. L. R. 1272.

The state constitution by making the judicial office elective has made the elective process subject to legislative control. Jordan v. Bailey, 37 Minn. 174, 33 N. W. 778; State ex rel. Weinberger v. Miller, 87 Ohio St. 12, 99 N. E. 1078, 44 L.R.A.(N.S.) 712, Ann. Cas. 1913E, 761. It is hardly necessary to add that the power to enact laws for the election of judges is to be exercised independent of and free from judicial control or interference. To say that we, who are subject to the corrupt practices act ourselves, may accord exemption from the act to our appointees, is preposterous. Much less may defendants be accorded such exemption in virtue of their membership. Attorneys at law are not exempt from legislative regulation by virtue of their office, except insofar as such legislation may interfere with the discharge of their functions as officers of the court. State v. Giantvalley, 123 Minn. 227, 143 N. W. 780; Peters v. State, 166 Ala. 35, 51 So. 952; Hamel v. People, 97 Ill. App. 527; People v. Wickes, 112 App. Div. 39, 98 N. Y. S. 163.

■ Payment of the expense of conducting the bar poll does not constitute a payment or contribution by defendant within the meaning of the corrupt practices act. This statute is aimed at the evils of excessive expenditures for campaign purposes by political parties, organizations, committees, individuals, and the candidates themselves and seeks to prevent such evils by prohibiting the acquisition of campaign funds or "war chests" to be so expended. The words "pay" and "contribute" imply, as they sometimes do in other connections, the transfer, giving, and delivery of money, property, or services. See Clarke's Appeal from Probate, 70 Conn. 195, 39 A. 155. Defendant does not turn over any money or property nor does it furnish any free service to any candidate. It expends the money itself in payment of expense incident to one of its authorized activities. The money is not expended on behalf of any candidate. The poll is taken in respect to all the candidates. But, says the plaintiff, the giving of a vote of preference is in itself a thing of value. That may be true, for it is certainly sought after by candidates. It is not, however, a thing

of value within the meaning of the statute which relates only to things which have a value measurable in money. Roberts v. Sturgill, 257 Ky. 194, 77 S. W. (2d) 789. The statute prohibits such payment, contribution, or furnishing of free service "directly or indirectly." The purpose of this language is that there shall be no evasion of the purpose or object of the statute. See Nelson v. Johnson, 38 Minn. 255, 36 N. W. 868.

The expense of the bar plebescite and the furnishing of the services of its officers in the management thereof are but incidental to the very proper exercise of defendant's powers to maintain the honor of the profession and promote the administration of justice. These powers but enable defendant to discharge duties of its members as citizens and lawyers. Although an attorney is not a public officer in the strictest sense, he comes very near it. Robinson's Case, 131 Mass. 376, 379, 41 Am. R. 239, quoting Lord Holt in White's case, 6 Mod. 18, "the office of an attorney concerns the public, for it is for the administration of justice." Sharswood's Legal Ethics (5 ed.) 54, expresses the view that the duties of a lawyer spring directly from his relation to the court and that it is a lawyer's duty to diffuse sound principles among the people that they may intelligently exercise their controlling power in the selection both of judges and legislators. Canons 1, 2, and 29, Professional and Judicial Ethics of the American Bar Association, recognize the selection of fit judges as a proper activity of the bar. A vast literature dealing with the question adopts the same view. See Booth v. Fletcher, 69 App. D. C. 351, 101 F. (2d) 676; In re H—— S——, 229 Mo. App. 44, 69 S. W. (2d) 325; 11 Va. L. Rev. 273. In "Some Duties of American Lawyers to American Law," 14 Yale L. J. 63, at p. 65, Elihu Root eloquently expressed the thought when he said:

"He is a poor-spirited fellow who conceives that he has no duty but to his clients and sets before himself no object but personal success. To be a lawyer working for fees is not to be any the less a citizen whose unbought service is due to his community and his country with his best and constant effort. And the law-

yer's profession demands of him something more than the ordinary public service of citizenship. He has a duty to the law. In the cause of peace and order and human rights against all injustice and wrong, he is the advocate of all men, present and to come. If he fail in loyalty to this cause; if he have not the earnestness and sincerity which come from a strong desire to maintain the reign of law; his voice will ring false in the courts and will fail to carry conviction to judicial minds."

Unlike the New York statute, ours does not require corporations to file statements of moneys expended for political purposes. Where a corporation is used as the device to evade the statute the courts will look through the corporate form to the real nature of the transaction. In re Vannier v. Anti-Saloon League, 238 N. Y. 457, 144 N. E. 679.

■ It is contended that, if the corrupt practices act were construed so as to prohibit the taking of the plebescite and the publication thereof, it would deny to defendant the liberty of the press. The only publication involved is public announcement of the result of the plebescite. That, it is admitted, involves no expenditure of money. No provision of the corrupt practices act prohibits such a publication. We fail to see how the point is involved here.

The construction of defendant's articles of incorporation and by-laws below is modified to conform to the views herein expressed.

Modified and as modified affirmed.

STONE, JUSTICE (concurring).

Inasmuch as our disposition of the third proposition discussed by Mr. Justice Peterson is decisive of the case, I see no occasion for expressing any opinion on the other points. This is not to be taken as a suggestion that as to them there is anything of error or inaccuracy in the opinion.