PENBERTHY ELECTROMELT COMPANY, *a Corporation*

*v.*

STAR CITY GLASS COMPANY, *a Corporation*

(No. 12238)

Submitted January 28, 1964.     Decided March 24, 1964.

*Baker & Armistead, Charles S. Armistead,* for appellant.

*Mike Magro, Jr., Kenneth E. Kincaid,* for appellee.

CAPLAN, JUDGE:

The plaintiff, Penberthy Electromelt Company, a Corporation, instituted an action in the Circuit Court of Monongalia County against Star City Glass Company, a Corporation, and Gayner Glass Works, a Corporation, wherein it alleged that the defendant, Star City Glass Company, had violated the terms of a written contract between the parties. Gayner Glass Works was dismissed, leaving Star City Glass Company as the sole defendant. This case was tried in said court before a jury in December, 1962. After a verdict was returned by the jury in favor of the plaintiff in the sum of $8,000.00, judgment was entered thereon and, on January 3, 1963, the court overruled the defendant's motion for judgment made pursuant to Rule 50 (b), R.C.P. On May 20, 1963, this Court granted the defendant's petition for an appeal and supersedeas to the final judgment made and entered on December 22, 1962.

This action arises from a contract entered into between the plaintiff and defendant under the terms of which the plaintiff, for a stated price, agreed to install its electric booster melting system in the glass tanks of the defendant company. This work was done, the fee was paid by the defendant to the plaintiff, and this part of the contract is not in issue in this case. The proposal was made by Larry Penberthy, president of the plaintiff company, by letter dated January 22, 1955, and was accepted by J. Chasan on February 20, 1955, in Morgantown, on behalf of the defendant company.

The pertinent provision of the contract which gives rise to this controversy reads as follows: "You agree not to * * * install, or assist others to install, a similar electric booster melting system in any other tank or tanks without previously making suitable arrangements with us, for a period of six years or for the life of any pertinent patents, whichever is longer."

The record discloses that subsequent to the completion of the installation of the electric booster melting system at the Star City Glass Company, as provided by the con-

tract, the defendant acquired the Gayner Glass Works, a glass manufacturing plant located at Salem, New Jersey. Thereafter, electric booster melting systems were installed in two of the furnaces of the newly acquired glass plant. When the plaintiff learned of these installations it demanded payment from the defendant in the sum of $12,000.00, which it asserted was the plaintiff's usual charge for assisting in the installation of such systems. Upon the refusal by the defendant to honor this demand, this action was instituted.

Before filing its answer the defendant moved to dismiss the action on the ground that the plaintiff corporation, not having qualified to do business in this state, was precluded from bringing and maintaining this action, since it had not complied with the provisions of Article 1, Chapter 31 of the Code of West Virginia. This motion was overruled by the court, and the defendant took a discovery deposition of Larry Penberthy, president of plaintiff corporation. In this deposition it appeared that the plaintiff, over a period of years, had installed its electric booster systems on tanks at Libby-Owens-Ford in Charleston, Owens-Illinois in Fairmont and at the plant at Star City. It further appears therein that Penberthy Electromelt Company is a foreign corporation and has never qualified to do business in the State of West Virginia as required by Article 1, Chapter 31 of our Code.

The three principal issues raised by the defendant in this appeal are: (1) The plaintiff, being a foreign corporation and having failed to qualify to do business in this state as required by statute, is precluded from bringing or maintaining an action in this state; (2) the provision of the agreement sued upon is too vague, indefinite, uncertain and ambiguous to be enforceable; and (3) the contractual provision upon which the plaintiff relies is an unreasonable restraint of trade, violative of the public policy of West Virginia, and is therefore unenforceable. The defendant also asserts that the plaintiff did not maintain the burden of its case by a preponderance of the evidence.

It is essential to first consider issue number one, raised by the defendant, that is, whether, in the circumstances of this case, the plaintiff may institute an action in this jurisdiction. The plaintiff, as stated above, is a foreign corporation and has never qualified to do business in this state as required by the provisions of Code, 1931, 31-1-79, as amended. The pertinent provisions of that statute read as follows:

> "Any corporation duly incorporated by the laws of any other state or territory of the United States * * * may * * * hold property and transact business in this state, upon complying with the provisions of this section and not otherwise. Such corporations so complying shall have the rights, powers and privileges, and be subject to the same regulations, restrictions and liabilities conferred and imposed on corporations chartered under the laws of this state. Every such corporation shall file with the secretary of state a copy of its articles of association or certificate of incorporation, with all amendments thereto, certified either by the secretary of state of the state of incorporation or the president or vice president of the corporation. The secretary of state shall thereupon issue to such corporation a certificate of the fact of its having done so, which certificate, together with a copy of its articles of association or certificate of incorporation and all amendments shall be recorded in the office of the clerk of the county court of the county, or one of the counties, in which its business is to be conducted.

> * * *

> "No corporation chartered under the laws of any other state or jurisdiction shall hold any property or transact any business or bring or maintain any action, suit or proceeding in this state without having complied with the requirements hereinbefore stated, * * *; and its failure so to do may be pleaded in abatement of any action, suit or proceeding instituted by it; * * *."

That a state has the power to prescribe the terms and conditions upon which a foreign corporation may do business within its limits has long been established. *Floyd v. Loan and Investment Co.*, 49 W. Va. 327, 38 S. E. 653. A

corporation is a creature of statute and is afforded only such power as the law which creates it allows. Such law can give a corporation force and effect in the domicile state only, and can not extend its authority to operate beyond its borders. A corporation's right to do business in a state other than that of its creation is accompanied by no legal sanction but may exist only as a matter of comity. 4 M.J., Corporations, Section 284; 23 Am. Jur., Foreign Corporations, Section 235.

The above quoted statute embodies certain terms and conditions required of a foreign corporation before it can legally do business in this state. Unless the requirements of that statute violate the commerce clause or other provision of the Federal Constitution, they are valid, and any foreign corporation desiring to do business in this state must comply therewith.

While the plaintiff does not here contend that the State of West Virginia can not regulate foreign corporations, it does take the position that it is not subject to the provisions of Code, 31-1-79, as amended, for the reasons (1) that it was not doing business in this state within the contemplation of the statute; and (2) that it was engaged in interstate commerce and the application of the statute would constitute an interference therewith.

Let us consider first the contention of the plaintiff that it was not doing business in this state within the contemplation of the statute. It takes the position that its operation in this state consisted of several isolated or sporadic acts which, because of the lack of continuity, did not constitute doing business in the state. Whether a corporation is doing business in the state within the terms of a statute imposing regulations or conditions on such corporation is a question dependent primarily upon the facts and circumstances of each particular case. *United Mercantile Agencies* v. *Jackson,* 351 Mo. 709, 173 S. W. 2d 881; *Peoples Tobacco Co.* v. *American Tobacco Co.,* 246 U. S. 79, 62 L. ed. 587, 38 S. Ct. 233; *Von Baumbach* v. *Sargent Land Co.,* 242 U. S. 503, 61 L. ed. 460, 37 S. Ct. 201; *Portland Cattle Loan Co.* v. *Hansen Livestock & Feeding Co.,*

*et al.,* 43 Idaho 343, 251 P. 1051; 23 Am. Jur., Foreign Corporations, Section 360.

In view of the dependence of the question upon the facts in each case, the authorities have stated that it is impossible categorically to state any general all embracing rule as to what constitutes doing business in a state by a foreign corporation. Since the statutes rarely define what is meant by "doing business" in the state, the determination of that question necessarily devolves on the courts.

In the instant case, Penberthy Electromelt Company, the plaintiff, forwarded a proposal from its office in Seattle, Washington, to the defendant, offering therein to install its electric booster melting system in the plant of the defendant. The letter making the proposal stated that the plaintiff would provide its special electrode holders, drawings and technical information. It was further stated therein that "We are to personally direct, through your supervisors, the installation of the electrodes, the final connections, and the initial adjustment of the system. Finally, we are to see that the system works properly, and instruct your personnel in its maintenance." This offer was accepted by the defendant in Morgantown, West Virginia, and will be deemed to have been a contract made in this state. *State ex rel. Coral Pools, Inc.* v. *Dennis R. Knapp, Judge, etc., et al.,* 147 W. Va. 704, 131 S. E. 2d 81.

It is pertinent to consider the character of the work done by the plaintiff, under the terms of the contract, and the nature of the plaintiff's business generally. The plaintiff company is not engaged primarily in the sale of equipment, machinery or any product. According to the deposition of Larry Penberthy, president of the plaintiff corporation, the plaintiff is "engaged primarily in the sale, licensing and otherwise providing of assistance and processes to the glass industry. Processes more generally." The "sale" referred to in the statement of Penberthy obviously relates to the sale of the electric booster system. The principal aspect thereof is the performance

of a service in this state. It appears clear from the record that the principal purpose for which the plaintiff corporation was created was to install its electric booster system in glass plants, regardless of their location.

It has been held that "doing business", as that term relates to the instant issue, means the doing of the business or character of business for which the corporation was created, or the transaction of the ordinary business in which the corporation is engaged, by the exercise of some of its charter powers. *People ex rel. Stead* v. *Chicago, I. & L. Ry. Co.,* 223 Ill. 581, 79 N. E. 144, 7 Ann. Cas. 1; *Home Lumber Co.* v. *Hopkins,* 107 Kan. 153, 190 P. 601, 10 A.L.R. 879; *Meir* v. *Crossley,* 305 Mo. 206, 264 S. W. 882, 35 A.L.R. 611; *Wells Fargo & Co.* v. *McArthur Bros. Mercantile Co.,* 42 Ariz. 405, 26 P. 2d 1021; *Crites* v. *Associated Frozen Food Packers,* 183 Ore. 191, 191 P. 2d 650; *Codman* v. *United States* (Mass.), 30 F. Supp. 732; *Davis & Worrell* v. *General Motors Acceptance Corporation,* 153 Ark. 626, 241 S. W. 44; *Hoffstater* v. *Jewell,* 33 Idaho 439, 196 P. 194; *State* v. *Superior Court of Yakima County,* 136 Wash. 653, 241 P. 303; *LaBelle* v. *Hennepin County Bar Ass'n.,* 206 Minn. 290, 288 N. W. 788, 125 A.L.R. 1023. An important consideration is the character rather than the amount of business done. *John Deere Plow Co.* v. *Wyland,* 69 Kan. 255, 76 P. 863, 2 Ann. Cas. 304.

As heretofore stated, Penberthy was organized primarily for the purpose of installing electric booster systems in glass plants, which consists mainly of performing a service. Certainly in this instance the plaintiff was carrying out the purpose for which it was organized.

The work in which the plaintiff was engaged, though it required certain skill and knowledge, was in the nature of construction work. In relation thereto the following pertinent statement is contained in 23 Am. Jur., Foreign Corporations, Section 380: "It is generally held that a foreign corporation which engages in doing construction work, as distinguished from engaging merely in installing an article sold, although it engages in performing but a single construction contract, engages in business within

the state and, therefore, becomes subject to state laws regulating the doing of business therein by foreign corporations. The performance of such work is not deemed to fall within the rule that a single or isolated transaction will not amount to doing business."

It is contended on behalf of the plaintiff that it was not transacting business in this state within the contemplation of Code, 1931, 31-1-79, as amended, for the reason that its operation consisted of a series of isolated acts. In view of the fact that the plaintiff was carrying on business in this state of the nature for which it was organized and in view of other circumstances revealed by the record, this contention is without merit.

The plaintiff readily admits that it was engaged in work in this state over a period of several years; that its work was not confined to one job or place; that it had made installations of its electric booster system in plants in Charleston, Fairmont and Morgantown; and that, these being nonexclusive franchises, it held itself available to perform this work in any other glass plant in the state. This corporation was performing in this state the main function for which it was organized. In these circumstances we think it unrealistic to say that the plaintiff was not doing business as contemplated by the Legislature when it enacted Code, 1931, 31-1-79, as amended. We hold, therefore, that the plaintiff was doing business in this state and that the statute, on this issue, is applicable.

We come now to the plaintiff's contention that by reason of its having engaged in interstate commerce, in the performance of the subject contract, the application of Code, 1931, 31-1-79, as amended, would constitute a violation under the commerce clause of the Federal Constitution. This position assumes, of course, that the plaintiff, in the instant case, was engaged in interstate commerce.

The character of the work performed by the plaintiff under this contract has been heretofore discussed. The contract was made in this state and the work done thereunder was of a purely local nature. The fact that the parties to the contract were from different states does not

necessarily constitute interstate commerce within the meaning of the commerce clause of the Federal Constitution. Accordingly, it is stated in 23 Am. Jur., Foreign Corporations, Section 277, that "* * * not every business which foreign corporations conduct across state lines constitutes interstate commerce, and many activities and transactions of such corporations which have interstate aspects are, notwithstanding, outside the inhibition which the commerce clause imposes on the state's power of regulation and control. The mere fact that the corporation's course of business involves commercial intercourse between different states does not withdraw from state control and regulation any activities essentially local in character * * *."

The authorities cited by the plaintiff involve either the sale of products by a corporation and the transportation thereof into another state or the sale of a product, machinery or equipment which is purchased in one state and transported to and assembled in another state. They all deal with a contract inherently relating to and intrinsically dealing with the thing sold.

Those authorities are readily distinguishable from the instant case. Here there was no shipment of a product from another state which could be considered the main incident of the contract. The record clearly reveals that the only items involved in interstate shipment were four electrode holders of the total value of forty dollars. These electrode holders, though important to the work performed, are certainly a minor consideration in a six thousand dollar contract. The principal incident of the contract was a particular type of construction on a tank which was used in the manufacture of glass. In the performance of that work the plaintiff was engaged in corporate activities of a local character, wholly separate from interstate commerce.

In support of its position the plaintiff quotes from 55 A.L.R. 726n, which reads as follows: "* * * the consensus of opinion is that a mere incidental agreement to assemble a structure sold in interstate commerce does not

destroy the nature of the transaction as one of interstate commerce and bring it within the state control. On the other hand, as pointed out in 11 A.L.R. 621, if the transaction is one in which the sale of a foreign-made product may be regarded rather as an incident of a contract for labor within the state, than as the chief incident of the transaction, the transaction falls within state control, and is not protected by the commerce clause of the Federal Constitution."

Inasmuch as we have herein stated that the chief incident of the contract was the work to be performed locally and not the sale of any product involved in interstate shipment, the last sentence of the quote from 55 A.L.R. 726, with which we are in agreement, clearly reveals that the transaction in the instant case does not fall within the protection of the commerce clause of the Federal Constitution. We are of the opinion, therefore, that on this ground the position of the plaintiff is not tenable and that the provisions of Code, 1931, 31-1-79, as amended, are applicable to this case.

The plaintiff further asserts that this action may be maintained, regardless of the requirements of the above statute, since the contract was fully executed. It is noted that the statute, Code, 1931, 31-1-79, as amended, makes no distinction between contracts which are executed or are executory. It provides that "* * * No corporation chartered under the laws of any other state or jurisdiction shall * * * bring or maintain any action, suit or proceeding in this state without having complied with the requirements hereinbefore stated, * * *." We can not agree that if a foreign corporation, without complying with the statute, executes a contract in this state, it is no longer subject to the provisions of the statute. If this were true the statute readily could be rendered meaningless by a foreign corporation illegally doing business in this state.

This statute embodies certain regulatory measures regarding the right of a foreign corporation to transact business in this state. It is also penal in nature, provid-

ing for the imposition of a fine for the failure to comply therewith. The state's power to provide such regulatory legislation is not questioned. As stated, it is applicable to this case, it having been determined herein that the plaintiff was doing business within the meaning thereof and that it was not engaged in interstate commerce. We therefore give full force and effect to the plain language of the statute and hold that by reason thereof the plaintiff is precluded from maintaining this action.

In view of our holding it becomes unnecessary to consider the additional assignments of error relied upon by the appellant in this appeal. The judgment of the Circuit Court of Monongalia County is reversed, the verdict is set aside and the case is remanded with directions that it be dismissed.

*Reversed and remanded with directions.*