Argued at Pendleton October 31, reversed December 31, 1918.

# DEARDORF *v.* IDAHO NAT. HARVESTER CO.

### (177 Pac. 33.)

**Corporations—Foreign Corporations—Jurisdiction of State Courts.**

1.   In determining authority of agent of foreign corporation in its relation to question whether corporation is doing business within the state, so as to be subject to jurisdiction of its courts, the agent's written contract of appointment must be taken as a whole, and question must turn upon the manner in which he was to carry out appointment.

**Corporations — Foreign Corporations — Jurisdiction "Doing Business" Within the State.**

2.   Contract between agent, engaged in soliciting business in state, and defendant harvester company, a foreign corporation, *held* to give to agent no authority further than to solicit, etc., so that defendant was not "doing business within the state" and was not subject to jurisdiction of courts of state, under Section 528, L. O. L., as amended by Laws of 1911, page 148.

**Courts—Extraterritorial Effect.**

3.   The laws of a state have no extraterritorial effect.

**Corporations—Foreign Corporations—Subjection to State Laws.**

4.   Until a foreign corporation comes within the state to "do business" as the term would be applied to an instance, where it permanently locates and actually transacts its business, the state laws cannot have any effect upon it.

**Corporations—Foreign Corporations—Jurisdiction of State Courts.**

5.   Mere solicitation, within a state, of orders to be sent out to home office of a foreign corporation as offers to be accepted there or rejected, constitutes interstate commerce and does not amount to corporations coming into the state, so as to subject itself to that jurisdiction.

**Corporations—Foreign Corporations—Jurisdiction of State Courts.**

6.   While it is possible for a foreign corporation to become subject to jurisdiction of Oregon courts, even while transacting interstate commerce, that result is not to be predicated upon the fact that an agent only solicited residents to send out of the state an offer to be accepted and filled in another state.

**Corporations — Foreign Corporations — Process—Return—Conclusiveness.**

7.   Sheriff's return of service of summons, reciting that defendant, foreign corporation, was at time of service doing business within the state, is not conclusive upon the court when called upon to decide its own jurisdiction.

[As to jurisdiction over foreign corporations, see note in 85 Am. St. Rep. 905.]

From Umatilla: GILBERT W. PHELPS, Judge.

In Banc.

The plaintiffs allege the breach of a warranty of a National Combine Harvester which they aver the defendant, an Idaho corporation, sold to them with the guaranty mentioned. The sheriff's return of service of summons is as follows:

"State of Oregon,
    County of Umatilla,—ss.

"I hereby certify that I served the within Summons on the within-named defendant, Idaho National Harvester Company, by delivering to Jesse A. Mathes, on October 23, 1917, a copy of said summons certified to by me as Sheriff, together with a copy of the complaint in this cause certified to by D. W. Bailey, attorney for the plaintiff; that such service was so made at Umatilla County, Oregon, and by delivering such copies to him in person; that at the time such service was so made the said Jesse A. Mathes was the agent of the said Idaho National Harvester Company, who was at that time doing business within Umatilla County, Oregon, and that said Jesse A. Mathes was then a resident of Umatilla County, Oregon, and transacting business within said County for the defendant. That at the time of said service the president or other head of said defendant, secretary or managing agent did not reside nor have an office in my said County.

"That said Jesse A. Mathes as such agent of defendant was engaged in soliciting business for defendant to be transacted in this state and elsewhere.

                    "T. D. TAYLOR, Sheriff.
                    "By J. A. BLAKELY, Deputy."

The defendant appeared specially and moved to quash the service of summons, because: (1) The return does not show that the summons was served upon the defendant; (2) The defendant during all of the times mentioned in the complaint and at the time of the at-

tempted service of summons, was a foreign corporation not engaged in or doing business in the State of Oregon, and the matters complained of occurred in the course of interstate commerce in a business conducted by the defendant; (3) The service of summons was not made upon any person competent under the law to accept service, so as to bind the defendant. Other reasons given are simply variations of those already mentioned. In support of the motion the affidavits of the general manager and the bookkeeper of the defendant company were filed, setting forth the manner of carrying on the transaction in question. These are best exemplified by a *résumé* of the terms of the agent's contract, of date February 19, 1917, between the defendant and Jesse A. Mathes, of Echo, Umatilla County, Oregon. The first clause narrates in substance that the company has constituted Mathes "its sole and exclusive agent during the year 1917, to handle, sell and dispose of harvesting-machines and extras therefor, manufactured by" the company, and confines his activities to Umatilla and Morrow Counties in the State of Oregon. It is further stated in that contract as follows:

"That the party of the first part hereby agrees to furnish to the party of the second part twenty (20) of its harvesting machines known as the 1917 Model to be manufactured during the years 1916 and 1917 and to be placed on board the cars not later than July 1, 1917, at Moscow, Idaho, consigned to the party of the second part, freight collect, and the party of the second part hereby agrees to furnish the party of the first part with orders on said party of the first part's regular order blanks to cover the sale of twenty (20) machines by April 1, 1917, or release said first party from the obligation of furnishing any more machines than orders are received in its Moscow, Idaho, office on April 1, 1917.

"It is agreed that the party of the second part shall cause to be paid to the party of the first part the full sum of Twelve Hundred ($1200.00) Dollars for each machine so delivered f. o. b. Moscow, Idaho, which said sum is to be paid upon the following terms: Two Hundred Fifty ($250:00) Dollars cash to be paid by the party of the second part to the party of the first part at Moscow, Idaho, at the time of the order therefor is transmitted to said first party or be evidenced by a note becoming due not later than April 1, 1917; Four Hundred Fifty ($450.00) Dollars to be covered by a note drawing eight (8) per cent interest from July 1, 1917, and maturing October 1, 1917; and Five Hundred ($500.00) Dollars to be covered by a note drawing eight (8) per cent interest from July 1, 1917, and maturing October 1, 1918. Any number of machines in addition to the twenty (20) machines which shall be ordered and delivered as aforesaid shall be furnished, delivered and paid for according to the terms incorporated in this agreement for the delivery and payment of the twenty (20) machines above mentioned."

For his services in the matter Mathes was to receive 10 per cent commission on the purchase price of each *bona fide* sale. The defendant also sets forth, as part of its showing to support its motion, the order made by the plaintiffs, as follows:

"Order for Machine.

"Idaho National Harvester Co., Ltd. (Incorporated), Moscow, Idaho, U. S. A.

"Gentlemen: The undersigned of Echo postoffice, County of Umatilla, State of Oregon, hereby purchases of you, to be shipped in time for the coming harvest, one of your 1917 Model National Combine Harvesters upon the following terms: $1200.00 f. o. b. Moscow, Idaho; Two Hundred Fifty Dollars June 15 cash with order and approved notes as follows: $450.00 payable on the fifteenth day of November, 1917, $500.00 payable on the fifteenth day of November, 1918. This order to be canceled in case of crop

failure.   Said notes to draw interest at the rate of 8 per cent per annum from date June 15 until maturity, and 10 per cent per annum from maturity until paid.

"Five (5) per cent discount on last deferred payment if paid by November 15, 1917.   Extras furnished free first year, except chains, where workmanship or material is at fault.

"Combine equipped with filled wheel and extra heavy roller guard.

"WARRANTY.

[Here follows warranty as set forth in the complaint.]

"The purchaser waives all claims for damages caused by accident, strike, or delay after the machine leaves the factory.   This order is to be sent to the Idaho National Harvester Company, Limited, Moscow, Idaho, for acceptance or rejection and shall only be binding on said company when accepted hereon.

"You will please ship on or before the June 15th day of 1917 (or as soon thereafter as possible) to D. F. Depperman and J. H. Deardorf, State of Oregon, in care of O.-W. R. & N. (P. C. Hunter, agent of company) for the undersigned.

"Dated the 7th day of May, 1917.

"(Signed) J. H. DEARDORF.

"D. F. DEPPERMAN.

"Sold by JESS A. MATHES.

"This order is taken subject to the approval of the Home Office."

It appears also that the plaintiffs gave their notes, one for $450 and the other for $500, both payable to the defendant at its office in Moscow, Idaho, representing part of the price of the machine.   The plaintiff Depperman filed his affidavit to the effect that he negotiated for the purchase of the machine with Mathes, delivering the contract for the purchase price to him with the notes, and received from him the written warranty sued on in this action, all at Echo, Oregon.   He claims that the plaintiffs never had any transaction with the company or the agent except at

that place, and that all of such transactions on which the issue arose occurred there.

The Circuit Court denied the defendant's motion and, it having failed further to plead, rendered judgment against it for the amount claimed by the plaintiffs as damages. The defendant appeals.

REVERSED.

For appellant there was a brief over the names of *Messrs. Suppiger & Ogden, Mr. C. M. White* and *Messrs. Raley & Raley,* with an oral argument by *Mr. White.*

For respondents there was a brief with an oral argument by *Mr. D. W. Bailey.*

BURNETT, J.—As early as *Hacheny* v. *Leary,* 12 Or. 40 (7 Pac. 329), this court held that soliciting business in a state for a nonresident corporation was not doing business within that state. That was a case where the plaintiffs claimed as indorsees of a note said to have been given in payment of an overdue premium on a previously issued policy of life insurance held by one of the defendants in a Kansas life insurance company. The company had an agent in Seattle, Washington, who solicited one Yesler to take out a policy on his own life. He received Yesler's application with the amount of the first premium in cash and forwarded them to the home office at Leavenworth, Kansas, for examination and approval by the company. Thereupon the insurance company accepted the application in Kansas, issued the policy and sent it by mail to the insured at Seattle. The second premium was not paid and the local agent then took from the insured a note for that amount and sent it to the company in Kansas. This was afterwards assigned to the plaintiff, who brought the action, and the defense was that

the note was taken in violation of the Washington law
that foreign corporations could not do business in that
state except under certain conditions with which the
company had not complied.   Treating, however, of the
application for the policy sent for acceptance by the
company in Kansas and the forwarding of the policy
from that state, the court, speaking by Mr. Justice
LORD, said:

"The final act which made the transaction a binding
contract upon the parties was the acceptance of the
application.   Until this took place it was a mere propo-
sition tendered, to be accepted or rejected.   The con-
tract was consummated when the company acted upon
the proposal and issued the policy, for then the minds
of the parties had met and agreed, 'What was before,'
says HARRIS, J., 'a mere proposition then became in-
vested with the attributes of a contract, and from that
time each party became bound for its performance.
If this be so, the contracts are to be regarded as hav-
ing been made when the company received and ac-
cepted the defendant's application, and issued and
transmitted to him their policies': *Hyde* v. *Goodnow,*
3 N. Y. 270.   It was, therefore, a contract of insur-
ance made and executed in Kansas": Citing authori-
ties.

The court, however, went on to hold that subse-
quently taking the note in Washington for the overdue
premium was transacting business within that state in
violation of its statute and hence that the plaintiff's
claim on that note would not be enforced.   This last
feature, however, was disregarded by this court in
*Bertin & Lepori* v. *Mattison,* 69 Or. 470 (139 Pac. 330).
There, a traveling man employed by the plaintiff, a
corporation of California, took the orders of a Port-
land firm for goods which were sent by the plaintiff
from San Francisco to the purchaser in Portland.
Not having the ready cash when the shipment arrived,

the Portland firm gave its note in Oregon, which Mattison and another there signed as accommodation makers. This court held that our statute restricting the operation of foreign corporations has no application to a case where such a concern sends into the state its traveling salesman, who takes orders and forwards them to the home office for its approval, the orders being afterwards filled by shipment to the customer. Substantially the same principle was upheld in *Spaulding* v. *McNary*, 64 Or. 491 (130 Pac. 391, 1128). There, the plaintiff manufactured carriages in Iowa. To effect sales of the same he employed agents who traveled through this state, among others, taking orders for vehicles of the kind, sending the orders to the plaintiff in Iowa, who after ascertaining the financial standing of the proposed buyer and being satisfied concerning it, shipped the carriage to Oregon to be delivered to the buyer by another agent. It was there held that this constituted a transaction of interstate commerce business which this state had no right to hamper by restrictive regulations. The same principle is reiterated by Mr. Justice BEAN in *Vermont Farm Machine Co.* v. *Hall*, 80 Or. 308 (156 Pac. 1073), to the effect that since taking orders to be filled by shipment of goods from another state or making sales by sample, by agents coming into the state for that purpose, is interstate commerce, in order to constitute "doing business" within this state by the plaintiff, the agent must have ample authority to transact some substantial portion of the seller's business or to make complete sales and not merely to take orders for goods.

1, 2. It is true that the general words of the contract were that Mathes was appointed for a year, "to handle, sell and dispose of harvesting-machines and extras therefor." We must, however, take the whole

instrument together and the case must turn upon the manner in which he was to carry out his part of the appointment. Succinctly stated, he had no authority in the premises further than to solicit a written application from a prospective buyer and tender it with the notes required to the defendant at its home office in Idaho, when if approved by it the machine applied for would be forwarded to the purchaser. It is plain that under all decisions this does not constitute doing business within the state so as to subject the corporation to the jurisdiction of our courts.

Section 528, L. O. L., as amended by the act of February 18, 1911, Laws of 1911, Chapter 103, reads thus:

"No corporation is subject to the jurisdiction of a court of this state, unless it appears in the court, or have been created by or under the laws of this state, or have an agency established therein for the transaction of some portion of its business, or have an agency established therein for the purpose of soliciting some portion of its business to be transacted in this state or elsewhere, or have property in this state; and in the last case only to the extent of such property at the time the jurisdiction attached."

3–6. It is axiomatic that the laws of a state have no extraterritorial effect. It is equally evident that until a foreign corporation comes within the state to do business as the term would be applied to an instance where it permanently locates here and actually transacts its business here, the state laws cannot have any effect upon it. Under the well-established principle, therefore, that the mere solicitation within a state of orders to be sent out of that state to the home office of a foreign corporation as offers to be accepted there or rejected by it, the goods ordered to be forwarded

to the would-be purchasers only in the event of acceptance, constitutes interstate commerce and does not amount to the foreign concern's coming into the state where the orders were solicited so as to subject itself to that jurisdiction, we must lay out of this case that part of this statute which asserts authority over a foreign corporation if it has an agency established in this state for the purpose of soliciting some portion of its business to be transacted "elsewhere." It is, indeed, possible for a foreign corporation or a citizen of another state to come into this state and become subject to the jurisdiction of the Oregon courts even while transacting interstate commerce from within this state, but that result is not to be predicated upon the fact that an agent only solicited residents here to send out of the state an offer to be accepted and filled in another state.

As said by Mr. Justice DAY in *People's Tobacco Co.* v. *American Tobacco Co.*, 246 U. S. 79 (62 L. Ed. 587, Ann. Cas. 1918C, 537, 38 Sup. Ct. Rep. 233):

"As to the continued practice of advertising its wares in Louisiana, and sending its soliciting agents into that state, as above detailed, the agents having no authority beyond solicitation, we think the previous decisions of this court have settled the law to be that such practices did not amount to that doing of business which subjects the corporation to the local jurisdiction for the purpose of service of process upon it: *Green* v. *Chicago, B. & Q. R. Co.*, 205 U. S. 530 (51 L. Ed. 916, 27 Sup. Ct. Rep. 595); *Philadelphia & Reading R. R. Co.* v. *McKibbin*, 243 U. S. 264 (61 L. Ed. 710, 37 Sup. Ct. Rep. 280)."

To like effect is *General Investment Co.* v. *Lake Shore & M. S. Ry. Co.* (C. C. A.), 250 Fed. 160.

7. The return of the sheriff is not conclusive upon the court when called upon to decide its own jurisdiction. The officer's report of his doings may be contradicted by evidence *aliunde*. It is not within his power to forestall the decision of the court upon the question of whether the person upon whom service was attempted is such an individual as represents the corporate defendant for that purpose. The conclusion of the whole matter is that it appears without dispute that Mathes had no authority to do more than to solicit business for the approval of the company at its home office in Idaho; that the offer was accepted there, making it an Idaho contract, and that the transaction involved did not constitute doing business within this state amounting to an appearance or presence of the corporation here. For the error of refusing to quash the service, the judgment is reversed, with directions to the Circuit Court to set aside the service of summons.                                                  REVERSED.

Mr. Justice HARRIS was not present at the hearing of this case.