## E. C. Artman Lumber Company v. Bogard.

(Decided May 6, 1921).

## Appeal from McCracken Circuit Court.

1.  Corporations—Carrying on Business Within the State—Contracts.
    —A contract entered into by a corporation without complying
    with the provisions of section 571 of the statutes is a voidable and
    not a void one and may be avoided or disaffirmed by the one not
    in fault at any time before the contract becomes fully executed,
    but after the contract has been completely performed and execut-
    ed the offending corporation may protect its property and its
    rights acquired thereby, and in litigation for that purpose the non-
    compliance with the statute will not be available as a defense.

2.  Corporations—Carrying on Business Within the State.—If the con-
    tract is executory and the innocent party who has a right to avoid
    it does so by transferring his interest in the subject matter of the
    contract his transferee may rely on the noncompliance with the
    statute by the corporation the same as if he had been a party to
    the contract; but whether a stranger to the contract occupying
    no relation of privity with the innocent party, and whose inter-
    ference is that of a tort feasor only, may rely on the defense is
    doubtful, but the question not being presented is not determined.

3.  Corporations—Carrying on Business Within the State—Estoppel.
    —One having the right to rely on such noncompliance is not es-
    topped to do so under the provisions of section 566 of the statute
    or upon any other principle of estoppel.

4.  Corporations—Carrying on Business Within the State—Contracts.
    —The defense of a noncompliance with the statute is available to
    one to whom it is allowed, although the contract involved was
    but a single transaction by the corporation in this state, since
    under the statute, as worded, a single transaction constitutes
    "carrying on any business" in this state; but in no case may the
    defense be interposed if the contract is one of interstate com-
    merce.

5.  Contracts—Executed Contract.—An executed contract is one
    where all the obligations imposed by it on each of the parties has
    been fully performed, as much so as the condition of, and the char-
    acter of, the property will permit, and so as to pass the title (if
    the contract involves a sale) from the seller or vendor to the pur-
    chaser or vendee; and where everything has been done that is re-
    quired by the law to pass the title to standing trees, including the
    payment of the consideration, the contract becomes executed
    within the meaning of the rule above stated; and if the property
    involved is left in the temporary possession of the seller or ven-
    dor, his possession is that of the purchaser or vendee and the re-
    lationship thus created arises out of the transfer of the title to

and ownership by the purchaser or vendor and which he obtained by virtue of the executed contract.

WHEELER & HUGHES for appellant.

MOCQUOT, BERRY & REED for appellee.

OPINION OF THE COURT BY JUDGE THOMAS.—Reversing.

The appellant and plaintiff below, E. C. Artman Lumber Company, is a Michigan corporation but conducting its business of operating a saw mill at Metropolis, Illinois. On April 19, 1916, it entered into a written contract with U. L. Rogers, who owned a tract of land in Trigg county, Kentucky, whereby it purchased from him nine standing white oak trees and one elm tree, each of which was described in the written contract and branded with the letter X. Plaintiff was to have as much time as it required to remove the trees; or in other words, there was no limitation of the time within which their removal should be made. The consideration of the purchase was $162.00 which was paid in cash at the time. The trees were not removed when this country became involved in the Great War, and after that labor conditions and transportation conditions were such as to postpone their removal, and in July, 1919, without repaying plaintiff the consideration or offering to do so, Rogers sold the same timber to the appellee and defendant below, Robert Bogard, who cut the white oak trees into saw logs and shipped them to a lumber concern at Paducah, Kentucky, and sold them for $800.00. At the time defendant purchased the trees from Rogers he had actual knowledge of all the facts connected with plaintiff's purchase of them and of their being branded.

This suit was filed in the McCracken circuit court by plaintiff against defendant in which it sought to recover of the latter the price he received for the logs made from the trees, and in the petition it waived the tort, if any, of which defendant was guilty, and sought recovery upon an implied contract on the part of defendant to pay for the trees which he had appropriated and converted to his own use. Among the defenses interposed was a non-compliance by plaintiff with the provisions of section 571 of the Kentucky Statutes, which in substance requires every corporation, except foreign insurance companies, before it shall be permitted to trans-

act or carry on *any* business in this state to file with the secretary of state a statement properly signed and "giving the location of its office or offices in this state, and the name or names of its agent or agents thereat on which process can be served." By written stipulation the parties agreed at the trial that plaintiff had not complied with that section of the statute at the time of its purchase of the trees, nor at any time since, and all the other above recited facts were also agreed to except nothing was stated therein as to why plaintiff was prevented from cutting the trees before defendant purchased them, but it was stipulated that it would have done so "if it had not been prevented by the action of defendant, in cutting, removing and taking possession of said trees." The law and the facts were submitted to the court without the intervention of a jury and it rendered judgment in favor of defendant and dismissed the petition. Plaintiff's motion for a new trial having been overruled, it prosecutes this appeal, and it is agreed by counsel for both sides that the only question for determination is whether, under the facts, as contained in the stipulation, the defense of a noncompliance with the provisions of the section, *supra,* of the statute constitutes an available defense. In avoidance of that defense plaintiff urges, (1) that a noncompliance therewith furnishes a defense only to the other contracting party or parties with the derelict corporation and may not be relied on by a stranger to the contract, as it is claimed defendant is in this case, and who, as it is further claimed, is a tort feasor and as such cannot invoke the statute; (2) that plaintiff was not "carrying on business" in this state within the contemplation of the statute, since the record shows only the single transaction, and therefore the statute is not applicable; (3) that the contract was an interstate one and in furtherance of interstate commerce, which relieved plaintiff of the duty of complying with the statute, since it is incompetent for the state to enact such regulatory measures affecting interstate transactions; (4) that the doctrine of estoppel should apply because Rogers would be estopped to question the right of plaintiff to enter into the contract and defendant, his privy, is similarly affected, and (5) that the contract under which plaintiff purchased the timber and paid the consideration is an executed one and its right to maintain the action is not affected because of its failure to comply with the statute.

Manifestly, if either one of the matters relied on in avoidance of the defense presented is meritorious the judgment is erroneous and should be reversed, otherwise it should be affirmed.   We have concluded that the learned judge who tried the case was correct in denying the first four of them, but that he erred in rejecting the fifth and last one, and because of that conclusion we will but briefly state, without discussion or elaboration, our reasons therefor as they relate to the first four grounds of avoidance.

The courts are divided in their conclusions concerning the inherent nature of a contract executed by a corporation in violation of such regulatory statutes. Some of them hold the contract to be void while others say it is voidable only at the option of the party not in fault. Some of the early opinions of this court in interpreting the effect of a contract so made would indicate that this court adopted the first view above expressed, *i. e.,* that the contract was void, and the courts of some of the other states adopt that view while others hold the contract to be voidable only.   For a discussion of the subject we refer to 14a Corpus Juris, pages 1294-1302, inclusive, and the many cases referred to in the notes.   Frequently the question is made to turn upon the phraseology of the statute under consideration, but we held in the very recent case of Yewell v. Board Drainage Commissioners of Daviess County, 187 Ky. 434, that a contract by a corporation made without complying with section 571, *supra,* of the statute, was *voidable* and not *void.*   In doing so we followed the also very recent case of Warren Oil & Gas Co. v. Gardner, 184 Ky. 411.   In that case section 199b of the statute was involved, which is one regulating the conduct of the business of partnerships, but necessarily the legal effect of such noncompliance upon the contract entered into in violation of the two statutes would be the same and we have concluded that because of the two recent cases referred to, and for the reasons hereinafter to be stated in considering avoidance number (5), that the true principle is to regard such contracts as voidable and not void.   This being true defendant was not a technical tort feasor; for if Rogers had the right to avoid the contract he did so when he sold defendant the timber in 1919, and the latter acquired all the rights by virtue of his purchase in and to the timber which was then possessed by Rogers. · If defendant had entered into no contract

with Rogers and had no privity relations with him and had willfuly and maliciously cut and appropriated the timber, there would be great reason to withhold from him the defense here interposed.

The matters relied on in avoidance (2) are equally untenable, since this court in the well considered case of Oliver Company v. Louisville Realty Company, 156 Ky. 628, and numerous others both prior and subsequent thereto, allowed this defense in a suit on a contract involving but *a single transaction* and, impliedly at least, adjudged that such a single transaction came within the prohibitory terms of our statute, and that it was not essential to enable the other party to rely upon them that there should have been many contracts made by the corporation or a succession of them covering a period of time, in order for it to be engaged in "carrying on *any* business in this state." This question, like the one considered above, is also largely governed by the terms of each statute under consideration. Corpus Juris, *supra,* 1274-1276. The state of Alabama has a statute worded exactly as is ours and the supreme court of that state in the case of Farrior v. New England Mortgage Security Co., 88 Ala. 275, 7 So. 200, held that the doing of a single act of business, if it was in the exercise of a corporate function, came within the purview of the statute and in the opinion the court said: "The phrase 'doing any business' is more comprehensive in meaning than the carrying on, or engaging in business generally, which involves the idea of continuance, or the repetition of like acts." And this conclusion was reached by giving some effect to the word "any" which it was presumed the legislature did not employ without a purpose. We can find nothing objectionable in the doctrine of the Alabama court, which has never been departed from by it, and in view of our former opinions, impliedly at least, adopting that construction, we do not feel authorized to hold that an offending corporation may excuse itself from a compliance with the statute upon the ground that the contract involved was *but a single transaction.* Moreover the purpose of the statute calls as loudly for its application in the case of a single transaction as much so as where there were many of them. That purpose, as frequently held by us, was to furnish those dealing with corporations a ready opportunity to adjust their rights growing out of the contract in the courts of this jurisdiction without hav-

ing to resort to foreign tribunals. The necessity for such litigation is liable to arise in case of only a single transaction and the benefits intended to be conferred by the statute should not be withheld on that account. The cases of Commonwealth v. Chattanooga Implement and Manufacturing Co., 126 Ky. 636, and Ichenhauser Co. v. Landrum's Assignee, 153 Ky. 316, are not in point and are not in conflict with the above conclusion, since the transaction involved in each of them was held insufficient to show the doing of any corporate business at all within this state.

If the contract here involved was actually one in interstate commerce there can be no doubt but what contention (3), in avoidance of the defense, would prevail. We held in the case of Bondurant v. Dahnke-Walker Milling Co., 175 Ky. 774, that a transaction possessing analogous features to the one here involved was not one in interstate commerce. The doctrine of that opinion was adhered to in a second appeal of the same case, reported in 185 Ky. 386, from which an appeal was prosecuted to the Supreme Court of the United States where the case is now pending; and whether our conclusions in those two cases will or will not be upheld by that court we are of the opinion, independently of them, that the transaction here involved was purely an intrastate one and that this contention cannot be upheld. The facts here involved are not nearly so persuasive of the interstate nature of the transaction as they were in the Bondurant case, as may be readily disclosed by reading our opinions therein.

Answering contention (4), made by plaintiff, it is sufficient to say that the same contention was also made in the Oliver Company case, supra, and was denied by this court, and in the opinion the distinction between relying upon the absence of a legal organization of a corporation by one entering into a contract with it as such, and relying upon the defense here interposed, is clearly pointed out; the one is based upon section 566 of our statutes forbidding one when sued to rely upon the failure of a legal organization of the contracting party which was contracted with as a corporation, while the other forbids a duly legalized corporation the benefits of the courts in enforcing an executory contract entered into at a time when it had failed to comply with a wholesome regulatory statute of this state.

In disposing of the last contention (5) made by plaintiff, it may be said that an executed contract arises ''when a thing contracted for is performed, nothing of the bargain remaining but its consequences. We call this an executed contract.'' Bishop on Contracts, section 636. Other authorities are: 13 Corpus Juris, 245; Elliott on Contracts, Vol. 1, section 15 and Vol. II, section 1841 (relating to real estate); 6 R. C. L., 590, and 9 Cyc. 244. Many cases are cited in the notes to the works referred to and many of them make the distinction between an executory and an executed contract to depend upon whether or not the negotiations have reached the stage where the title to the thing contracted for passes and vests in the purchaser, or vendee if it be real estate; and especially so if the contract has been entered into according to the prevailing forms of law, applicable to its subject matter, and the consideration has been paid, both of which is true in this case.   As said by Mr. Bishop in the section, *supra*: ''All obstructions to the execution, arising from defects or imperfections in the form or substance, are removed by the parties in their voluntary doing.   If, in such doing, any equities between them have arisen, of a sort whereof the law can take cognizance, it will create a contract for their adjustment, but in most cases there are none.''   Such a legally created contract, as therein mentioned, is one which comes into existence independently of the original and executed contract and arises from and grows out of the fact of title or ownership acquired by the original executed contract.   The same rule for determining whether a contract is executed or executory applies to a contract transferring the title to real estate as to one involving the sale of personalty as will be seen from Devlin on Real Estate, section 264, wherein the author says: ''But when a present unconditional delivery has been made, the deed becomes immediately operative.   After delivery the deed becomes executed contract and all rights resulting from the transaction are fixed.''   In the case of Watkins v. Nugen, 118 Ga. 372, the validity of a deed executed for a clearly immoral consideration was involved.   It had been voluntarily delivered by the grantor to the grantee with the intention of transferring the title.   The possession at the time of the suit had been taken, but notwithstanding that fact the court said: ''It is contended that a deed does not become an executed contract until possession is obtained under it.   Even if counsel's premise be con-

ceded, we do not agree to his conclusion." The court then continues by saying that the old doctrine of "livery of seisin" did not prevail in Georgia (as it does not with us) and that it was not necessary to transfer title, or to carry into execution the contract of sale of real estate, that corporal investiture should be made, and then adds: "A deed is a contract executed. Even if not recorded it passes the title, as against the grantor, his heirs and devisees." To the same effect is the case of Beard v. White, 120 Ga. 1018, wherein the court said: "In Georgia there is no livery of seisin. Possession is not necessary to the acquisition of title to land. Title goes out of the grantor and into the grantee at the moment of the delivery of the deed. The contract is thereby fully executed." See also cases in Words and Phrases, 1st edition, vol. 3, page 2562 and, same work 2nd edition, vol. 2, pages 280-281, and see also case of Blevins v. Blevins, 143 Ky. 220. The contract in this case was sufficient to pass title to the timber involved, since it was in writing as required by subsection 13 of section 1409 of the Kentucky Statutes, and the trees were immediately branded upon the execution of the written contract as provided by subsection 14 of the same section. In the cases of Byassee v. Reese, 4 Met. 372; Asher Lumber Co. v. Cornett, 23 Ky. L. R. 602; Dills v. Hatcher, 24 Ky. L. R. 826; Wiggins v. Jackson, *Idem*, 2189; Bell County Land and Coal Co. v. Moss, 30 Ky. L. R. 6, and Bowerman & Co. v. Taylor, 127 Ky. 812, it was held that a valid sale of standing trees in contemplation of immediate separation *ipso facto* converted them into personalty, and in the Moss case it was held that if the contract of sale stipulated a time within which the trees were to be removed the conversion thereof into personalty would occur if the trees were removed within the stipulated time. But, whether this case is to be determined by the doctrine of those cases, or whether the trees are to be considered, under the contract here involved, as a sale of realty is not material; for if they became personalty upon the making of the contract and the payment of the consideration, at which time the title passed to plaintiff, then Rogers thereafter became plaintiff's bailee of them, a relationship which the law created as an incident of ownership which was made perfect by the executed contract and which created contract of bailment was collateral to and grew out of the executed one through which plain-

tiff obtained title. If, however, the trees remained
realty then he, in the same manner became plain-
tiff's tenant at will and his possession of them was
plaintiff's possession, the latter having been given the
symbolic possession of them as completely as could be
done consistent with the separate ownership of the land
by Rogers and of the trees by plaintiff. It is not essen-
tial in order to secure the right in the purchaser or ven-
dee that a stipulation for possession of the thing pur-
chased should be contained in the contract of sale,
whether it be a deed or other writing, except in so far as
the parties desire to modify the created or implied one by
operation of law in his favor as an incident of ownership,
which he in turn acquired by the vesting of title in him
according to the forms of law required for that purpose.
So that in this case plaintiff, after it became vested with
title to the trees and consequently the owner of them, had
the right to physically possess itself of them independent-
ly of the contract through and by which it obtained the
title.    Therefore, at the time Rogers attempted to sell
them to defendant he avoided no right which the contract
between him and defendant *exclusively* created, but he
thereby disregarded a right possessed by plaintiff which
the law created and vested in it when it became the owner
of the trees.

In the case of Bridgewater v. Byassee, 29 Ky. L. R.
377, there is an expression in the opinion to the effect that
the delivery of possession of land to the vendee is neces-
sary for the contract of sale to become an executed one,
notwithstanding the deed was duly delivered, but we do
not regard that expression as controlling this case, since
it is clearly *obiter* and the insertion of it in the opinion
was wholly unnecessary to the determination of the ques-
tion involved.    Moreover, that expression was used with
reference to a contract for a sale of land as such and not
the sale of a separate article issuing from or growing
upon the land and which was incapable of manual occu-
pation.    .

The contract then being an executed one the courts
are quite consistent in holding that the defense here in-
terposed will not apply.    In 14a Corpus Juris, page 1305,
this rule is thus stated: ''The doctrine that a contract en-
tered into by a foreign corporation without having com-
plied with the statute prescribing conditions precedent
to its right to do business in a state is void or voidable,

and cannot be enforced by the corporation, does not affect the rights of either party under a contract which has been fully executed or prevent the corporation from maintaining or defending actions to protect such rights.'' Among the numerous cases cited in the notes is that of Citizens Trust and Guaranty Co. v. Hays, 167 Ky. 560, in which we adopted and applied the doctrine of the text just quoted.

Our conclusion, therefore, is that because the contract here involved was an executed one the noncompliance with section 571 of the statutes did not constitute a defense and the court erred in so holding.

Wherefore, the judgment is reversed with directions to proceed in accordance with the principles of this opinion. The whole court sat in the consideration of this case.