Argued September 22, affirmed October 18, 1927.

# RASHFORD LUMBER CO. *v.* P. J. DOLAN.

(260 Pac. 224.)

**Appeal and Error—Findings of Trial Court on Contradictory Evidence Held Binding.**

1. Appellate court *held* bound to assume that findings of trial court based on contradictory evidence were correct.

**Commerce — Transaction Whereby Washington Corporation Sold Railroad Ties in Washington and Delivered Them There for Transportation to Oregon Held Interstate and not to Violate Oregon Law Relating to Foreign Corporations (Or. L., §§ 6909, 6910).**

2. Transaction *held* interstate and not to violate Sections 6909, 6910, Or. L., requiring a foreign corporation to do certain things before it might do business within state, where Washington corporation, having its principal place of business in that state, manufactured railroad ties and sold them in that state and delivered them on board railroad cars there for transportation to Oregon.

**Corporations—Sale by Foreign Corporation of Rejected Portions of Interstate Shipments of Lumber Held not to Violate Statutes Relating to Foreign Corporations Doing Business (Or. L., §§ 6909, 6910).**

3. Where Washington corporation shipped lumber from Washington to buyer in Oregon and buyer inspected lumber at destination and rejected a portion thereof, sale of the rejected portion to a local buyer *held* not to violate Sections 6909, 6910, Or. L., requiring foreign corporations to do certain things before they might do business within the state; the sale of the rejected portions being a mere isolated emergency transaction.

**Corporations — Court is Reluctant to Enforce Forfeiture Based on Strained Construction of Statute Requiring Foreign Corporation to Secure License (Or. L., §§ 6909, 6910).**

4. Court will be reluctant to enforce forfeiture of claim of foreign corporation for failure to secure license to do business within state, based on strained construction of Sections 6909, 6910, Or. L., requiring it to obtain license in order to do business within state.

---

Appeal and Error, 4 C. J., p. 883, n. 33.
Commerce, 12 C. J., p. 27, n. 93.
Corporations, 14a C. J., p. 1273, n. 5, p. 1275, n. 15, p. 1276, n. 27, p. 1286, n. 9.

1. See 2 R. C. L. 207.
2. See 12 R. C. L. 73.
3. See 12 R. C. L. 69.

From Multnomah: J. U. Campbell, Judge.

Department 1.

The plaintiff, Rashford Lumber Company, is a lumber manufacturing corporation having its office, mill and principal place of business at Amboy in the State of Washington.

The complaint alleges that at the dates mentioned the plaintiff had been selling lumber of various dimensions to the National Tank & Pipe Company located at Kenton, near Portland, Oregon, making delivery of the same by shipment on railroad cars from its mill near Amboy to the yards of the National Tank & Pipe Company at Kenton; that in the course of such deliveries a portion of each carload arriving at said yard was rejected upon inspection by said National Tank & Pipe Company as being unsuitable for its use; that in order to dispose of such rejected material plaintiff, in July, 1923, made an oral agreement with defendant whereby it agreed to sell and defendant agreed to purchase the said rejected material, as it might accumulate in the yards of the National Tank & Pipe Company, at the agreed price of $20 per thousand feet, it being agreed that the defendant would remove the said material from the yard of the National Tank & Pipe Company on its own trucks; that pursuant to said agreement, defendant sent its trucks to the yard of the National Tank & Pipe Company and between the —— day of July, 1923, and the twenty-fourth day of January, 1924, removed from said yard 99,307 feet of said material; that 4,494 feet were paid for under a special and separate agreement leaving 94,813 feet unpaid for. There was a demand for judgment for the sum of $1,896.26.

The defendant answered, denying any information and belief of the corporate existence of plaintiff, and substantially admitting by a qualified denial that plaintiff had been selling lumber and shipping it by rail from Amboy, Washington, to the National Tank & Pipe Company at Kenton, Oregon; that in the course of such deliveries, a certain portion of each delivery had been rejected by said company as unsuitable for its use, and denied the other allegations of the complaint.

By a further and separate answer defendant alleged that plaintiff was a Washington corporation and, substantially, that it had failed to comply with Sections 6909 and 6910, Or. L., in that it had continually failed and neglected to file with the corporation commissioner a declaration of its intention and purpose to carry on business in the State of Oregon, or to pay its license fee, or to appoint an attorney-in-fact- in said state, and that it was at all the dates mentioned in the complaint, and at the commencement of this action, transacting business in the State of Oregon by selling lumber for profit therein.

A further answer pleaded the statute of frauds, and another further answer denied that the amount of lumber furnished to the defendant exceeded 40,000 feet, and alleged that the lumber so furnished was not of the quality and standard agreed by defendant and that it was worth no more than $10 per thousand. Plaintiff replied admitting that it had not filed any declaration of intention to transact business in Oregon, had not paid any license fee or had an attorney-in-fact and that the contract was oral, but alleged that it had been fully performed by it, and denied that it had engaged in the business of selling lumber in the State of Oregon.

A trial by the court was had upon these issues, both parties waiving a jury, the court found in favor of plaintiff upon every allegation, and gave judgment against defendant as prayed for in the complaint, from which judgment defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. I. G. Ankelis* and *Mr. Thomas Mannix,* with an oral argument by *Mr. Ankelis.*

For respondent there was a brief over the names of *Mr. C. W. Hall* and *Mr. R. A. Coan,* with an oral argument by *Mr. Hall.*

McBRIDE, J.—1, 2.. As to the amount and quality of lumber received by defendant under the agreement, the evidence is somewhat contradictory, but we are precluded by the findings of the court from weighing the evidence on that subject and are required by the law to assume that such findings are correct. The only question left for our consideration is the plea urged by the defendant that the plaintiff has failed to comply with the laws of Oregon by transacting business in this state without filing a declaration of its intention so to do, paying its license fee and appointing an attorney-in-fact in this state.

The plaintiff is a lumber manufacturing corporation of the State of Washington having its principal place of business at Amboy, in that state. A large part of its business has been the manufacture of railroad ties which were sold and delivered to the O. W. R. & N. railway corporation in Washington and delivered upon the cars in that state for transportation to the State of Oregon, which was plainly an interstate

transaction and no infraction of the Oregon laws: *Bertin & Lapori* v. *Mattison,* 69 Or. 470, 475 (139 Pac. 330); *Loveland* v. *Warner,* 103 Or. 638, 657 (204 Pac. 622, 206 Pac. 298).

3. The next transaction detailed in the evidence relates to the sale by plaintiff of certain material to the National Tank & Pipe Company to be used in the manufacturing plant of that company. The facts seem to be that in the year 1923, or about that time, the National Tank & Pipe Company made an agreement that it would take all of certain kinds of lumber that the Rashford Lumber Company could saw at its mill which was suitable for its purpose. Perhaps we cannot state the contract more briefly than to give it in the language of Mr. L. E. Long, the active manager of the National Tank & Pipe Company, which is as follows:

"We the year previous had done business with Mr. Rashford and when the fall season came on there he couldn't haul the lumber in, he came to us and asked us if he would cut all winter, would we be willing to buy the stuff from him, and we told him we would providing he would take care of it so that it would not have this black sap, this black stain on it, and he agreed to that, and we agreed to purchase such as he accumulated at a price to be agreed upon, when he shipped. He was to come to us when he shipped and we was to get together on a matter of price. And shortly before they were able to haul Mr. Rashford came into the office and we agreed on a price for this material, and when the road was ready he shipped it in, and as the shipments came in, why, there was a good deal of it stained with this sap, and we had to lay it to one side, because we could not handle it. Mr. Rashford then came to us and told us that he had some two-inch lumber too that he was very anxious to move, but it had been 'tight-piled,' and

some of it might be stained,—and we told him we could not use the stained material, but that we would take the lumber that we could use, and he shipped it in. It seems that when the lumber came in there was a good deal of it stained, and we had to lay it to one side and we accumulated quite a bit of it and Mr. Rashford wondered what he was going to do with it, and I suggested that he might go to the Dolan Wrecking & Construction Company and sell it to them.''

The shipments made under this contract began in June, 1923, and continued to September.

It appears from the testimony of plaintiff's witness that none of the lumber was of an inferior quality, but that, principally, by reason of a black stain arising from sap, a percentage of it was not of a character to admit of the staining process used by the National Tank & Pipe Company, although suitable for other purposes where paint was to be used. A small portion was rather under the required sizes for cross-arms, *et cetera,* but plaintiff contends that, other than for these purposes, it was good lumber. The lumber was partially but not very carefully inspected at Yacolt where it was loaded on the cars for shipment to Kenton, but was finally inspected by the National Tank & Pipe Company as it was unloaded at Kenton as seems to have been contemplated in the first place, and such as the company deemed to be unfit for its purpose was rejected and piled separately in that company's yard. Up to the time the lumber was unloaded, it was purely an interstate shipment, and there is nothing in the evidence that there was any collusion between plaintiff and the National Tank & Pipe Company that the rejections should be made for the purpose of covering up an Oregon transaction

122 Or.—37

between plaintiff and any prospective buyer of the rejected material. Plaintiff was receiving on an average of $37.50 at least for such material as should be accepted by the National Tank & Pipe Company, and it was to its best interest that every stick shipped should be accepted as its loss by rejection would be $17 on every thousand feet. The National Tank & Pipe Company was in the market for material fit for its purposes and it was not to its interest to reject anything suitable for its use. The rejection of a percentage of the lumber shipped was a mere incident of the shipment embarrassing to both parties. The National Tank & Pipe Company finally grew impatient at having its yard "cluttered up" with this rejected material which, while it might be useful and fit in some lines of business, was merely a nuisance to them. When they remonstrated at being encumbered with these rejections plaintiff faced an emergency. The timber had to be disposed of in some way and plaintiff was practically compelled to dispose of it, and that soon. It, therefore, sold the lumber to the defendant for a much less price than it hoped to have received from the National Tank & Pipe Company and, in the emergency, it probably could have done nothing else. It was an isolated and an emergency transaction thrust upon plaintiff by the peculiar circumstances of the case. The plaintiff had no office or place of business in this state and has manifested no disposition to make this state a base of operation, or to engage generally in the business of lumber dealing in Oregon. Whatever view we might take of the evidence, as to the quantity of lumber defendant actually received, is foreclosed by the finding of the Circuit Court, and, as to the question here discussed, we believe the transaction between plaintiff and de-

fendant is within the rule announced in *Commercial Bank* v. *Sherman*, 28 Or. 573 (43 Pac. 658, 52 Am. St. Rep. 811); *Bertin & Lepori* v. *Mattison, supra; Major Creek Lum. Co.* v. *Johnson*, 99 Or. 172 (195 Pac. 177); *Deardorf* v. *Idaho Nat. Harvester Co.*, 90 Or. 425 (177 Pac. 33); *Endicott, Johnson & Co.* v. *Multnomah Co.*, 96 Or. 679 (190 Pac. 1109).

4. Courts are reluctant to enforce a forfeiture of a claim upon a strained construction of a statute, and such is the case here.

The judgment is affirmed.                    Affirmed.

Rand, C. J., and Coshow and Brown, JJ., concur.