Argued March 3; affirmed March 30, 1948

CRITES ET AL. *v.* ASSOCIATED FROZEN FOOD
PACKERS, INC. ET AL., ALBANY ICE & COLD
STORAGE, INC., Garnishee, SEATTLE ASSO-
CIATION OF CREDIT MEN, a Corporation,
Intervenor

191 P. (2d) 650

*Edward A. Boyrie,* of Portland, argued the cause for appellant. With him on the brief was Francis J. Krause, of Portland.

*Orval Thompson,* of Albany, argued the cause for respondents. On the brief were Weatherford & Thompson, of Albany.

Before ROSSMAN, Chief Justice, and LUSK, BELT, BAILEY and BRAND, Justices.

BELT, J.

Plaintiffs commenced an action to recover the reasonable value of merchandise sold and delivered to the defendants and caused a Writ of Attachment and a Notice of Garnishment to be served on the Albany Ice & Cold Storage, Inc., on November 29, 1946. The garnishee made its return stating in effect that since a common law assignment for the benefit of creditors was made by defendants to the Seattle Association of Credit Men and was recorded in the deed records of Linn county, Oregon, on November 13, 1946, the interest of the defendants in any property which was held by the garnishee was transferred to the Seattle Association of Credit Men. The plaintiffs, being dissatisfied with the return of the garnishee, filed certain allegations and interrogatories seeking to show that the common law assignment was void because the Seattle Association of Credit Men, a Washington corporation, was not qualified to transact business in this state. At this stage of the proceedings, the Seattle Association of Credit Men, with permission of the court, filed a complaint in intervention to protect its interest under the common law assignment in 3,418 cases of frozen fruits and vegetables stored in the plant of the garnishee at Albany, Oregon. To this complaint in intervention the plaintiffs demurred on the ground that the Intervenor did not have legal capacity

to sue or intervene. The court sustained the demurrer and, on the refusal of the intervenor to plead further, dismissed the suit. From the decree of dismissal, intervenor appeals.

The sole question presented by the demurrer is whether it appears on the face of the complaint in intervention that this foreign corporation was "transacting any business" in this state within the meaning of § 77-301, O. C. L. A. This section in part provides:

"* * * It shall be the duty of every such foreign corporation * * * to maintain at all times within this state some qualified person as its attorney in fact, as herein provided, and in default thereof, it shall not be entitled to *transact any business* within this state or maintain any suit, action or proceeding in its courts." (Italics ours.)

It appears from the complaint in intervention—the material allegations of which are admitted on demurrer —that the Seattle Association of Credit Men is a corporation organized and existing under and by virtue of the laws of the state of Washington; that the Associated Frozen Food Packers, Inc., which is also a Washington corporation, executed and delivered to the intervenor on November 7, 1946, a common law assignment, a copy of which is attached to the complaint and made a part thereof; that such assignment was recorded in the deed records of Linn county, Oregon, on November 13, 1946; that at the time of such assignment—which was accepted by the intervenor—the assignor was the owner of certain frozen foods heretofore mentioned and in the possession of the garnishee. The intervenor also alleges:

"That pursuant to the terms of said common law assignment, Intervenor became and now is entitled to possession of said merchandise and to sell and

dispose of the same pursuant to the provisions of said common law assignment."

It is further alleged by the intervenor that it has not qualified to do business in the state of Oregon and that it "has not and is not doing business within the State of Oregon."

Under this assignment the assignee was authorized to take immediate possession of all the defendants' property, real and personal, and to sell the same, collectively or separately, for the benefit of creditors. Assignee was authorized to "control, use, manage, operate and dispose" of this property, for the purposes of the trust, as if it were the absolute owner thereof. Assignee had authority to "collect, sell or compromise all outstanding accounts, notes and bills receivable, and choses in action, and determine whether or not suit should be brought on the same." It was provided in the assignment that the assignee was to be compensated for its services on a percentage basis on the amount of money realized in the liquidation of the trust estate.

■ It thus appears from the complaint in intervention that: (1) The Seattle Association of Credit Men is a foreign corporation; (2) Such corporation "has not qualified to do business in the State of Oregon." If it also appears from such pleading that the transaction in question is within the purview of the restrictive statute, a demurrer will lie. *Beamish v. Noon,* 76 Or. 415, 149 P. 522; 18 Fletcher, Corporations, § 8622. If, as contended by the appellant-intervenor, it was not doing business in the state within the meaning of the statute, the demurrer ought to have been overruled. The allegation of the intervenor that it "has not and is not doing business within the State of Oregon" is not controlling in view of the specific allegation of

facts showing that the intervenor is transacting business within the meaning of the statute.

■ It is observed that § 77-301, O. C. L. A., prescribing the terms and conditions on which foreign corporations may transact business in the state, does not define what shall constitute "transacting business." It, therefore, devolves on this court to determine the meaning thereof. The authorities are in great conflict on such question. Some courts construe such statutes in a strict sense, while others are more liberal in their construction. We think such restrictive acts should not be construed in a strict or literal sense. It is not every corporate act that constitutes "doing business." The act should be given a reasonable construction that will effectuate the purpose of its enactment. It is believed that the legislature, in prescribing the terms and conditions on which foreign corporations may transact business in this state, sought to protect the public against fraud and the imposition of unreliable corporations. The legislature intended to bring such corporations within the jurisdiction of courts and to place them and domestic corporations on the same plane. *Hoffman Construction Co. v. Erwin,* 331 Pa. 384, 200 Atl. 579; *Alabama Western R. R. v. Talley-Bates Construction Co.,* 162 Ala. 396, 50 So. 341.

■ The diversity of opinion in the courts relative to the construction of such statutes may be attributed to some extent to the difference in their phraseology. It is observed that the statute of this state is more comprehensive than most enactments regulating the operation of foreign corporations. It is observed that § 77-301, O. C. L. A. applies to the transaction of *any* business. It is reasonable to assume that the legislature attached

some significance to the word "any." As said in *Farrior v. New England Mortgage Security Co.*, 88 Ala. 275, 7 So. 200:

> "The phrase 'doing any business' is more comprehensive in meaning than the carrying on or engaging in business generally, which involves the idea of continuance, or the repetition of like acts."

Such distinction was also recognized in *E. C. Artman Lumber Co. v. Bogard*, 191 Ky. 392, 230 S. W. 953. We do not imply, however, that every corporate act is within the purview of the statute.

■ We are mindful of the well settled rule that a single transaction which is merely incidental to the ordinary business in which the corporation is engaged does not constitute "doing business" within the meaning of the act. 20 C. J. S. 48, § 1830, citing numerous authorities in support of the text, including *Rashford Lumber Co. v. P. J. Dolan*, 122 Or. 572, 260 P. 224.

■■ A single transaction, however, may be of such character as to bring a corporation within the statute if it is a part of the ordinary business of the corporation. *In re Wellings' Estate*, 192 Cal. 506, 221 P. 628; *General Conference of Free Baptists v. Berkey*, 156 Cal. 466, 105 P. 411; *John Deere Plow Co. v. Wyland*, 69 Kan. 255, 76 P. 863; *Farrior v. New England Mortgage Security Co.*, supra; *State v. Bristol Sav. Bank*, 108 Ala. 3, 18 So. 533; *E. C. Artman Lumber Co. v. Bogard*, supra; *Hoffman Construction Co. v. Erwin*, supra; *Tomson v. Iowa State Traveling Men's Ass'n.*, 88 Neb. 399, 129 N. W. 529; 17 Fletcher, Corporations, § 8470. As said in 20 C. J. S. 49, § 1830:

> " * * * a foreign corporation is doing business within the meaning of the statutes where the single

act engaged in within the state is the very act which the corporation was organized to perform."

The pertinent inquiry is: Is the corporation engaged in the transaction of that kind of business, or any part thereof, for which it was created and organized? If so, it "does business" within the meaning of the act. 23 Am. Jur. 346, § 365; *Hoffstater v. Jewell*, 33 Idaho 439, 196 P. 194; *State ex rel. Anacortes Veneer, Inc. v. O'Phelan*, 23 Wash. (2d) 142, 160 P. (2d) 515; *State ex rel. Guernsey-Newton Co. v. Superior Court of Yakima County*, 136 Wash. 653, 241 P. 303. As said in *Brandtjen & Kluge, Inc. v. Nanson*, 9 Wash. (2d) 362, 115 P. (2d) 731:

> "Whether a foreign corporation is doing business in this state does not depend upon the number of transactions that it has, but upon the nature and character of the transactions."

It is not so much the volume of the business transacted nor the length of time of operations as it is the character of the transaction that is determinative. It is the purpose for which the foreign corporation comes into the state that is controlling. *Adjustment Bureau of the Portland Ass'n of Credit Men v. Conley*, 44 Idaho 148, 255 P. 414.

■ Incidental activities are acts which a corporation has power to perform, but which do not represent the performance of its main purpose. *Green v. Chicago, B. & Q. Ry.*, 205 U. S. 530, 51 L. E. 916, 27 S. C. 595; *People v. Chicago, I. & L. Ry.*, 223 Ill. 581, 79 N. E. 144. There is a distinction between what a corporation has the power to do and what it does pursuant to the dominant purpose for which it was organized. 23 Am. Jur. 346, § 365.

In *Guaranty Trust Company, In re Jones' Estate*,

248 Mass. 319, 143 N. E. 46, the Guaranty Trust Company of New York was appointed as trustee to execute several testamentary trusts, some of which concerned property in the state of Massachusetts. As trustee under the will, the Guaranty Trust Company had active duties to perform extending over an uncertain period of time. It was necessary to care for and invest certain funds belonging to the estate, to pay the income to the beneficiary, and to render accounts concerning the same. The court said:

> "The trustee was not called upon to perform a single isolated act of business, but was required to carry on a series of acts during the lifetime of the beneficiary. It was authorized by its charter to act as trustee and acting as such it would be engaged in the usual and ordinary business of the corporation itself and for which it was organized."

It was held that the foreign corporation was transacting business within the meaning of the statute of that state.

In *In re Wellings' Estate,* supra, a well considered case by the Supreme Court of California, it was urged that the Michigan Trust Company, a foreign corporation, acting as trustee under a will and testament, was only engaged in a single and isolated transaction. The court, after making reference to the general rule prevailing in most jurisdictions, said:

> "* * * when a foreign corporation enters a state other than that of its creation, for the purpose of doing some substantial part of its ordinary business, or of exercising some of the functions for which it was created, it is transacting business within that state. When such foreign corporation does directly the primary business for which it was organized, it is 'doing business' within the meaning of the statute."

 It is common knowledge that the acceptance for profit by a collection agency of an assignment for the benefit of creditors constitutes a substantial part of its ordinary business. *Koepple v. Morrison,* 84 Cal. A. 137, 257 P. 590. The name under which the intervenor in this case operates reasonably suggests the kind and character of the business in which it is engaged. 31 C. J. S. Evidence, 548, § 29. The acceptance of the assignment imposed upon the Seattle Association of Credit Men certain active duties necessary to be performed in order to accomplish the purposes of the trust. We think it can not be said that in liquidating the assets of this insolvent company, pursuant to the authority vested in the Intervenor by the assignment, Intervenor would be engaged in an incidental or isolated business transaction. The execution of such trust involves a series of transactions which are a part of the ordinary business of this foreign corporation. Under the assignment it is necessary for such corporation to come into this state and through its agents take immediate possession of the property of the defendants, take an inventory of the same, and do various other acts necessary to fulfill its trust. We conclude that the Seattle Association of Credit Men in the performance of its duties under the assignment will be transacting business within the meaning of the statute.

 The determination of whether a foreign corporation is "doing" or "transacting" business in a state, within the meaning of a particular statute, is primarily dependent upon the facts and circumstances of the case, considered in the light of the purposes and the language of the statute. Each case depends upon its own particular facts. There is no decision by this court based upon a similar factual situation. After a careful con-

sideration of the authorities in this and other jurisdictions, we have deemed it advisable to state what we think are the true legal principles applicable herein, rather than to undertake further to review the authorities.

Appellant-intervenor relies on *Commercial Bank v. Sherman*, 28 Or. 573, 43 P. 658, and *Rashford Lumber Co. v. P. J. Dolan*, supra. The Commercial Bank case involved the purchase by a foreign corporation in this state of a single note. The court, speaking through Chief Justice ROBERT S. BEAN, said:

> "In our opinion the statute, when reasonably construed, was intended to prohibit certain foreign corporations coming into this state for the purpose of transacting their ordinary corporate business without first appointing some resident agent upon whom service of summons could be had in case of litigation between them and citizens of the state, and was not designed or intended to prohibit the doing of one single isolated act of business by such a corporation, with no intention apparent to do any other act or engage in business here."

We think the above is a correct statement of the law, but think there is a material difference in the facts of that case and the one at bar. The court, in directing attention to § 3276, Hill's Code, said:

> "It will be noticed the statute does not require the power of attorney to be recorded before 'doing *any* business,' but 'before transacting business' * * * *." (Italics ours.)

As the statute then existed—which was enacted in 1864—it is true that the word "any" was not included. However, a complete and comprehensive act regulating foreign corporations was enacted in 1903 and repealed § 3276, Hill's Code. The fact that the new act covered

the transaction of *any* business strengthens our conclusion as to the intention of the legislature in enacting the statute as it now exists.

*Rashford Lumber Co. v. P. J. Dolan,* supra, is not in point as it involved, as the court said, "an isolated and an emergency transaction thrust upon plaintiff by the peculiar circumstances of the case."

The decree is affirmed. Plaintiffs are entitled to costs and disbursements.